## The State *vs.* John Barr.

On the trial of a complaint for a violation of the statute against keeping open on Sunday "a shop, house, store, saloon or other building in which it is reputed that spirituous and intoxicating liquors, ale and lager beer, are exposed for sale," it appeared that the accused kept open an inclosed park, containing four acres of ground, within which was an uninclosed and uncovered platform for dancing, from which lager beer was sold.

Held, that the statute was not intended to reach all sales of intoxicating liquors on Sunday, or all cases where such liquors are exposed for sale on that day, but was designed to reach cases where such liquors are kept in buildings for purposes of sale, until such buildings acquire the reputation specified in the statute, and that neither the park nor the platform was a "house," "saloon" or "building" within the meaning of the statute.

COMPLAINT for keeping open on Sunday a house, saloon and building in which it was reputed that spirituous liquors, ale and lager beer, were exposed for sale; brought to the City Court of Bridgeport, appealed to the Superior Court, and tried to the jury on the plea of not guilty, before *Sanford, J.* The jury rendered a verdict of guilty, and the accused moved for a new trial for error in the rulings and charge of the court.

Upon the trial the state proved that on the 27th day of Au-

gust, 1871, being Sunday, the defendant, who was proprietor of a place known as " Iranistan Park," containing about four acres of ground, kept said park open on Sunday to the admission of individuals upon the payment of an admission fee of five cents, for which sum a ticket of admission was given. The ticket entitled the holder to a glass of lager beer. No other spirituous or intoxicating liquors or ale were disposed of upon the premises on said day. No money was taken for anything disposed of upon the premises, except what was taken at the gate on admission to the park. About the middle of the park was a platform of boards laid upon sleepers which lay upon the ground, which was used, and had been for a long time previous used, for dancing on occasions of picnics in the park. The platform had benches upon it, but had no covering at the top or sides, except that there was a railing around the sides to prevent the dancers from stepping off while dancing. On the day in question lager beer was dispensed to individuals in exchange for tickets received at the gate. The beer was drawn from kegs which stood on skids on one corner of the platform. No spirituous or intoxicating liquor, ale or lager beer, had ever been sold or given away from this platform before said 27th of August, but lager beer had been dispensed on a Sunday previous for tickets, from under one of the trees of the park. In one corner of the park, about six hundred feet from the street, and about three hundred feet from the platform, was a building which was kept and used as a bar-room for the sale of spirituous and intoxicating liquors, ale and lager beer.

The state offered evidence to prove that the park was a place in which it was reputed that spirituous and intoxicating liquors, ale and lager beer, were exposed for sale. The counsel for the accused objected to the admission of such evidence, on the ground that the park was not a " shop, house, store, saloon or other building," but the court overruled the objection and admitted the testimony.

The state claimed, and asked the court to charge the jury, that the park was a saloon within the meaning of section 4, title 52, of the General Statutes, and that the platform was a

building within the meaning of that section. The counsel for the accused asked the court to charge that the park was not a saloon, and that the platform was not a building, within the meaning of that section.

The court charged the jury *pro forma* that the platform was a building within the meaning of section 4, and further charged that, in order to constitute the offence, it was not necessary to prove that the building in which the bar-room was located was "kept open," but that the offence might be committed if spirituous or intoxicating liquors, ale or lager beer, were sold outside of the building containing the bar-room, and upon the premises contained within the limits of the park.

The court further charged that the purpose and policy of the statute was to keep closed on Sunday all places where liquors are sold; that a door might be open temporarily into a bar-room, and the law not violated, and if the doors to a bar-room were closed, the law might be violated by bringing liquors out on the sidewalk and selling them.

*Lockwood*, in support of the motion.

*White*, State Attorney, and *Bullock*, contra.

PARK, J. The information in this case charges the accused with keeping "open a certain house, saloon and building, in which it was then and there reputed that spirituous liquors, ale and lager beer, were exposed for sale" &c., and the proof upon the trial was that the accused kept open a certain park, consisting of four acres of open ground, in which it was reputed that spirituous and intoxicating liquors, ale and lager beer, were exposed for sale. The accused objected to the evidence tending to show that the park had such reputation, but the court admitted it, and the first question presented for our consideration is whether the evidence was properly received. The language of the statute on which the information is based is as follows: "No person, &c., shall keep open any shop, house, store, saloon or other building, in which it is reputed

State *v.* Barr.

that spirituous or intoxicating liquors, ale or lager beer, are exposed for sale." In order to constitute a breach of this statute, two things, among others, must concur. First, a place must be kept open which can properly be called either a shop, house, store, saloon, or other building; and secondly, the place must have the reputation described in the statute.

In the present case the place kept open and having such reputation is described in the information to be a house, saloon and building. Hence the state must be confined in its proof to a place bearing the description which is here given, for the law will never allow one place to be described in which an offence is alleged to have been committed, and another place proved on the trial; and especially is this true in cases where some place of a particular description is an important element in the alleged crime. This principle applies as much in the present case to the place having such reputation, as it does to the question whether the place was kept open or not. This is evident and requires no elaboration. The question then is, can the park properly be called a house, saloon or building? Unless it can be so designated, the evidence regarding its reputation should have been excluded by the 'court. We think it is manifestly clear that an open tract of land, consisting of four acres of ground, whether inclosed by an ordinary fence or not, cannot in any sense be called a house, saloon or building. These terms apply to erections made by men for use or convenience, as a dwelling house, a store, a church, a barn, &c. It is no answer to say that the platform described in the motion was a building within the meaning of the information, and the statute on which it is based; for if so, then the evidence of reputation should have been confined to the platform, and the reputation of the park generally should have been excluded. *Non constat* but that the park had derived its reputation from what had transpired in other parts of the park. Indeed it so appears in the motion, for it is expressly stated that no spirituous or intoxicating liquors, ale or lager beer, had ever before been sold from the platform, but such liquors had been sold in other parts of the park. These considerations induce us to think that the evidence was improperly received.

The disposition we have made of this question of evidence renders it unnecessary to consider whether the court erred in charging the jury *pro formâ* that the platform was a building, within the meaning of the information and the statute on which it is based. But, inasmuch as the case may be tried again, we will briefly consider this question.

The principal argument in support of the charge consists in the fact that the act of the accused on the occasion complained of is clearly within the mischief that the statute was intended to remedy, and unless the platform is held to be a building within the meaning of the Act, an easy mode is afforded of evading the law. This argument would apply with equal force to the transaction that had taken place under one of the trees of the park on a previous Sunday, and would apply with like force to the case in hand if no platform had been there, and the transaction in other respects had been the same. The argument seems to admit the necessity of some erection that may be called a building, in order to bring the case within the statutory provision. The claim is that a building is a thing built, and hence the platform, being built, became a building. This definition would constitute a fence inclosing a tract of land, however large, a building, and should a transaction like the present one occur within the inclosure, it would of course occur within the walls of the building, and the party committing the act would be guilty of this offence. This seems absurd. Webster defines a building to be "a fabric or edifice constructed for use or convenience, as a house, a church, a shop, &c." This is the universal meaning of the word, and no one can doubt that the legislature used it in this sense, and especially when he considers the relative words of the statute, " shop, house, store and saloon." The language is, "no person, &c., shall keep open any shop, house, store, saloon or other building;" that is, "other building" *ejusdem generis* as those named. *Regina* v. *Reed*, 28 E. L. & E., 133. We think it is clear that the statute was never intended to reach all sales of spirituous or intoxicating liquors on Sunday, or all cases where such liquors are exposed for sale on that day, but was designed to reach

the worst class of cases of this description, cases where such liquors are kept in buildings for purposes of sale, until such places shall acquire the reputation specified in the statute; places that ordinarily entice the vicious and intemperate to frequent them for purposes of drunkenness and debauchery, and who would frequent them for like purposes on Sunday, should the places be kept open for their reception. We think this statute was intended to remedy such evils as these, leaving offenders in other cases to be dealt with under other statutes provided for them. The conclusion therefore that we have come to is, that the court erred in charging the jury that the platform was a building within the meaning of the statute. We are not called upon to consider whether, if the building containing the bar-room had been opened on Sunday, and the liquors removed to the platform for purposes of sale, the accused might not have been guilty of this offence in keeping open the bar-room, even if it had been kept open no longer than was necessary for the removal of the liquors. It seems that he would have been, but this question is not before us, and we leave it undetermined.

A new trial is advised.

In this opinion the other judges concurred.