MIDDLESEX THEATRE, INC., ET AL.
*vs.*
EDWARD J. HICKEY, COMMISSIONER

Coram: Hon. Patrick B. O'Sullivan, a Judge
of the Superior Court.

MEMORANDUM FILED JULY 19, 1940.

*Carlos Ellis*, of Middletown, for the Plaintiffs.

*Harry L. Brooks*, Assistant Attorney General, of Hartford, for the Defendant.

O'SULLIVAN, J. The above captioned case was originally returnable to the Superior Court for Middlesex County. Because of the need for speedy decision thereon, the parties have stipulated that the matter might be heard by the undersigned as though the case had been made returnable before him in the first instance.

This proceeding is an appeal, then, to the undersigned, acting as a Judge of the Superior Court, from a decision of Edward J. Hickey, Commissioner of State Police, who on June 20, 1940, granted to one Maria Adorno a certificate to operate an open air motion picture theatre in the City of Middletown.

The full transcript of the proceedings before the commissioner, augmented to a minor degree by admissions and a small amount of evidence, indicates that the following are the facts. On June 29, 1939, Maria Adorno filed with the commissioner an application for a certificate of approval of a motion picture theatre which she wished to open in the rear of No. 175 Main Street, Middletown. This procedure was conformable to section 2316 of the General Statutes, Revision of 1930. The named plaintiff, among others, then filed with the commissioner its objection to favorable action on the application. Several hearings were held by the commissioner, who on July 28, 1939, rendered a decision that a certificate of approval would be issued, contingent upon certain changes being made in the layout of the theatre. The commissioner further decided that the certificate would issue only for a seating capacity of 300.

He took this position on the ground that the theatre was a building and hence fell within the provisions of the building code of the City of Middletown. In this, he was following an interpretation of the code made two weeks previously by the city's legal advisor. No appeal was taken from the commissioner's decision and, in fact, no certificate was ever issued upon it.

Sometime after the decision was rendered, but to challenge an order of the city's superintendent of public works made on July 12, 1939, whereby former permission to lay out 988 seats. was revoked, Mrs. Adorno brought to the Superior Court an action which concluded with a judgment in her favor on April 15, 1940, wherein it was decided that the theatre, as it was to be constructed, was not a building and hence, that it was not subject to the limitation of 300 patrons, were the code applicable.

Thereafter, on April 30, 1940, Mrs. Adorno filed with the commissioner a new application for a certificate of approval of the theatre with a seating capacity of 988 persons. On May 27th, Middlesex Theatre, Inc., Middletown Enterprises, Inc., and Frank Arrigoni & Son, Inc., who are the plaintiffs herein, filed their objections. After holding a few hearings on the matter, the commissioner filed a written memorandum on June 20th wherein he decided that a certificate of approval for the theatre to accommodate 988 patrons should be granted, subject to certain conditions which have no present importance on the questions involved.

The plaintiffs appealed from this decision and have limited their grievances to three claims:

1. The operation of the theatre will create an unreasonable hazard from fire or panic.

In an appeal of this nature, there is no retrial of disputed questions of fact decided by the commissioner. The undersigned is limited to the determination of whether he acted illegally or exceeded or abused his power or acted arbitrarily or without necessary notice and a reasonable opportunity to an objector to be heard. *Skarzynski vs. Liquor Control Commission*, 122 Conn. 521; *Grady vs. Katz*, 124 id. 525; *Kram vs. Public Utilities Commission*, 126 id. 543.

The painstaking effort of the efficient commissioner to ascer-

tain what, if any, hazard to the safety of persons would result from the operation of this theatre and the presence of conflict' ing evidence upon this subject, together with the many changes required by him to attain a reasonable probability of safety, places this first claim entirely beyond the power of a reviewer to alter. It seems perfectly obvious that the commissioner has acted legally and reasonably.

2. The second claim is that the certificate of approval is illegal and contrary to the building code because, in fact, the theatre is a building and as such, is subject to the limitation of a seating capacity of 300 patrons.

Exhibit B is a copy of the building code, adopted in 1925 by the common council of the City of Middletown. The pur' pose of such a code, among other things, is to provide safe' guards for the lives and property of a city's citizens. Such an objective, indeed, is to be expressly found in the report of the drafting committee when submitting to the council the proposed ordinance. In view of this purpose, a narrow view of its pro' visions should not mark one's approach to its construction. But on the other hand, a strained and false interpretation should not be accorded language whose ambit is perfectly obvious.

Unfortunately, the code does not define the word "building." Webster says that a building is an edifice, framed or con' structed, designed to stand more or less permanently, and covering a space of land, for use as a dwelling, storehouse, factory, shelter for beasts or some other useful purpose. With such a generous significance attached to the word, it is not surprising, then, to see the lengths to which some courts have gone in construing statutes wherein the word is used. In *State vs. Barr*, 39 Conn. 40, on the other hand, the court said (p. 43): "We think it is manifestly clear that an open tract of land, consisting of four acres of ground, whether inclosed by an ordinary fence or not, cannot in any sense be called a house, saloon or building. These terms apply to erections made by men for use or convenience, as a dwelling house, a store, a church, a barn, &c."

An examination of article 27 of the code indicates that the ordinance was adopted to meet conditions prevailing in a building, as that term is ordinarily used, namely, a permanent structure of walls, a roof, and floors. For example, there are provisions for the construction of walls, heating apparatus,

doors and doorways, foyers, lobbies, gallery exits, staircases, fire escapes and the like.

But the theatre in question has none of these. It is located in a rather large yard. The audience sits on chairs attached to a flooring upon sleepers lying on the ground. No roof is overhead; no walls are on any side. Facing the audience is a shadow box containing a screen upon which the picture is thrown from a projection booth to the rear. Around the yard is a wire fence, obviously intended not to house the patrons but to prevent an interloper from entering without purchasing a ticket.

I cannot reach any other conclusion than that this theatre is not a building, which leads to the further conclusion that the code does not apply with its provision that the seating capacity is limited to 300.

3. The final claim of the plaintiffs is that the commissioner had no authority to hear and act upon the second application, made in 1940. The point appears to be that the action of the commissioner on the 1939 application was final, and in the absence of an appeal therefrom, the decision of 1939 is conclusive.

An administrative officer or board should not ordinarily be permitted to review his or its own decisions and revoke action once duly taken. Otherwise there would be no finality to the proceeding. The result would be subject to change at the whim of the officer or board, or to the effect of influence exerted, or other undesirable elements tending to uncertainty and impermanence. *Burr vs. Rago*, 120 Conn. 287.

This is a wholesome and salutory rule but it is by no means inflexible. Where a change of conditions has occurred since the decision of the administrator or where other considerations have arisen materially affecting the merits of the matter and no vested rights have intervened, it is reasonable and appropriate to the functions of efficient administrative machinery that the subject matter be re-examined in the light of the altered circumstances. *St. Patrick's Church Corp. vs. Daniels*, 113 Conn. 132.

Since rendering his decision in 1939, a changed and material circumstance was made available by the judgment of the Superior Court in holding that the building code was not

applicable. This alone would, it seems to me, be sufficient to permit the commissioner to change his viewpoint and entertain the second application made by Mrs. Adorno in 1940.

But I seriously question the application of the rule at all. Under section 2318 of the General Statutes, Revision of 1930, every person intending to operate a motion picture theatre must make an application each year to the commissioner, "which application shall describe the location of the place and shall give its seating capacity and such other information" as may be required. Each year, the commissioner must make an investigation as to the suitability of the applicant. Upon being satisfied that he ought so to do, the commissioner, each year, must issue a license which expires on September 1st. On that date, all right to operate a theatre ceases and the only legal method of continuing it is through filing a new application for the ensuing 12 months.

This statutory requirement of re-applying each year takes this case from the scope of the rule above referred to. The decision of 1939 lost its authority on September 1st, and the only possible course for Mrs. Adorno to pursue, if she cared to operate after that date, was to file another application.

Whether the theatre shall be so operated as to keep it from becoming a nuisance is, of course, for the future to determine. Manifestly, the possession of a license issued by an official of the state will not bar an injured party from obtaining relief should occasion arise to seek it.

It is ordered that the certificate of approval be forthwith issued by the commissioner.