ELSIE BERNINGER *v.* JOHN C. KELLY,
COMMISSIONER OF STATE POLICE

SUPERIOR COURT     NEW HAVEN COUNTY     FILE NO. 79944

Memorandum filed June 29, 1954.

*T. Holmes Bracken,* of New Haven, for the plaintiff.

*William L. Beers,* attorney general, and *Thomas J. Conroy,* assistant attorney general, both of Hartford, for the named defendant.

*Bernard E. Francis,* of Hartford, for the defendant Perri.

KING, J. The appellant, Elsie Berninger, owns, and with her husband operates, a large motel on the Boston Post Road, in Branford. One Anthony Perri applied to the commissioner of state police, under General Statutes § 3700, for a certificate of approval for the operation of a drive-in theater on land adjoining the appellant's property. The commissioner, after hearing, found both person and place to be suitable, and accordingly granted the certificate of approval. From this action the appellant took this appeal.

At the outset it should be noted that the procedure under § 3700, is but one step in securing authority to operate a moving picture theater. Thereafter approval must be obtained under § 3694. The operation of the theater must also conform to the other requirements of chapter 173 of the General Statutes. And of course the granting of the certificate of approval does not authorize the maintenance of a nuisance. *Middlesex Theatre, Inc.* v. *Hickey,* 8 Conn. Sup. 355, 361, aff'd, 128 Conn. 20.

The appellant makes three basic claims with respect to her appeal.

(a) She claims that the application was illegal because signed only by Anthony Perri whereas the tract of land proposed to be used was owned by Anthony and his brother John. This defect, if it can be called one, is immaterial, since there is no reason to suppose Anthony was not authorized to act for his brother John. We are dealing with a simple administrative procedure, not with a matter of conveyancing. No formal authority to act was needed and the record suggests no lack of authority in the applicant to act for his brother. *State* v. *Segar,* 96 Conn. 428, 436.

(b) The second claim is that the commissioner refused to consider the depreciating effect of the operation of a drive-in theater on the appellant's land. This was claimed to consist principally in noise late at night when patrons' automobiles would be leaving the theater at the end of the performance.

The short answer to this claim is that it does not appear that the commissioner did so rule. A discussion took place near the outset of the hearing (transcript, pp. 5-7) in which the commissioner indicated at one point (p. 5) that he would not consider this element, but on page 7 he appears to have agreed that he would consider it, even though he expressed some doubt again on page 36. He admitted much evidence bearing on this element, which fortifies the view that he did consider it. Indeed, on the over-all transcript, there is no real support for the appellant's claim that the commissioner restricted his consideration to the likelihood of an actual physical invasion of the plaintiff's property, as by fire.

The language of § 3700 (under which this proceeding took place) provides that any owner of real estate so situated that it is likely to be injured by

"the operation of such [motion picture] machine or the location of the building in which such machine is proposed to be operated may file with the commissioner any objection which such owner may have to the granting of such certificate." This defines what persons have an interest such that they are entitled to file objections. Manifestly it does not purport to state, as the appellant seems to claim, the only considerations involved in determining suitability of the applicant or of the proposed place of operation.

Indeed rarely, if ever, could unsuitability of the person (as distinguished from unsuitability of the place) be found to be of a character such that as a consequence "the operation of [the motion picture] machine or the location of the building in which such machine is proposed to be operated" would be likely to injure adjacent real estate. This demonstrates that the question of unsuitability of the person and place can be determined on no such narrow considerations as those which determine an interest sufficient to warrant the filing of an objection to the granting of the certificate of approval.

While the making of a finding of facts is desirable, it is not necessary in a proceeding of this kind. *Grady* v. *Katz,* 124 Conn. 525, 530. Without such a finding, it is impossible to determine, or test, the impact of any given evidence upon the trier. The distinction is roughly analogous to that between a criminal case tried to the court and one tried to the jury, as pointed out in *State* v. *Frost,* 105 Conn. 326, 329.

Nor should it be overlooked that the defendant commissioner, in view of his duties under the statutes, might well be considered as an expert in the field of motion picture theaters, entitled to use his own expert knowledge. Here, as the transcript

shows, expert testimony by the witness Lockwood was offered by the appellant, principally as to noise from the theater, and was admitted and carefully considered by the defendant. *Jaffe* v. *State Department of Health,* 135 Conn. 339, 349. No expert testimony was offered in the present appeal to this court. Id., 355.

The test for granting the certificate is suitability of the applicant and suitability of the place. If the applicant and place are both suitable, the certificate issues; if either is unsuitable, the certificate does not issue. *Clapp* v. *Ulbrich,* 140 Conn. 637, 640.

The appellant persisted in claiming that her evidence was undisputed. That it was uncontradicted did not make it undisputed or require the commissioner to credit it. Furthermore the appellant's motel, on her own testimony, is located on a noisy section of the Boston Post Road where heavy truck traffic persists throughout the night. This was no quiet retreat, and the commissioner might well have found, as he apparently did, that any increase in noise from the operation of the drive-in theater would be unimportant in its effect on the appellant's motel. It was agreed that Branford has no applicable zoning regulations. Obviously, § 3700 does not envision that the commissioner shall constitute himself an over-all czar establishing zoning rules to suit his fancy under the guise of determining suitability of person and place under § 3700.

(c) The third claim of the appellant is that the applicant is an unsuitable person because he has had no prior experience in the motion picture or theatrical business. There is no reason to believe that a theater owner is or should be an accomplished projectionist or otherwise have any technical knowledge of the business. His chances of financial success may be better if he has such technical knowledge.

But it is always obtainable in the open market. *E. M. Loew's Enterprises, Inc.* v. *International Alliance,* 127 Conn. 415. And furthermore the law requires an examination before one may receive a license to operate a motion picture machine. § 3703.

Furthermore, it should not be overlooked that the authority granted in this proceeding is inoperative until compliance is had with the provisions of § 3694. In other words, the authority herein granted presupposes that the theater will at all times be operated in accordance with the strict requirements of chapter 173 of the General Statutes.

The court is unable to find any basis in the transcript, or otherwise, for a claim that the commissioner acted illegally in concluding both person and place were suitable. This is our test. *Middlesex Theatre, Inc.* v. *Hickey,* 8 Conn. Sup. 355, 358; *Jaffe* v. *State Department of Health,* 135 Conn. 339, 353.

The appeal is denied and dismissed.