NATHAN B. JAFFE *v.* STATE DEPARTMENT OF HEALTH

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued December 10, 1948—decided February 8, 1949.

*Jacob Schwolsky,* with whom was *Henry J. Goldberg,* for the appellant (plaintiff).

*Harry L. Brooks,* assistant attorney general, with whom was *William L. Hadden,* attorney general, for the appellee (defendant).

*James W. Carpenter,* with whom was *David Cramer,* as amicus curiae.

MALTBIE, C. J.   The question presented by this appeal is whether the state medical examining board

acted properly in determining that the plaintiff's certificate of registration to practice medicine and surgery should be revoked under the provisions of §§ 475f and 476f of the 1941 Supplement to the General Statutes (Rev. 1949, §§ 4358, 4359). The plaintiff appealed to the Superior Court, and from its decision sustaining the action of the board he has appealed to this court.

The original complaint against the plaintiff was made to the board by the commissioner of health and charged, on information and belief, that the plaintiff had treated Norman Dombris "in a fraudulent, dishonorable, unprofessional and incompetent manner." Notice of the complaint was given the plaintiff and he was summoned to appear before the board at a designated time for a hearing. Previous to that time plaintiff's counsel wrote an assistant attorney general, as counsel for the board, asking for a more specific statement of the charges. The assistant attorney general in reply sent a "Summary of Complaint." It stated that the plaintiff had operated on Dombris for a fissure, that the plaintiff had charged $150, ultimately reduced to $125, which Dombris paid, that the latter said that "his bowels did not move for 4 days," that he then consulted another physician and surgeon and was told that he still had the fissure, that he was taken to a hospital where he was operated upon, and that the charge made for that operation was $50 with an additional $12 for hospital visits. A hearing was held before the board. Thereafter it voted to sustain the charge that the plaintiff treated Dombris "in a fraudulent, dishonorable, unprofessional and incompetent manner," and it recommended to the state department of health that the plaintiff's certificate of registration be revoked. In making that recommendation it was acting under the provisions of § 476f of

the 1941 Supplement to the General Statutes, which requires that, upon the receipt of such a recommendation, the certificate of a medical practitioner shall be revoked.

In the recommendation to the department of health, the board incorporated a statement that its action "was based upon certain subordinate facts adduced from the testimony at the hearing" and detailed its conclusions as to the conduct of the plaintiff in this way: "Fraudulent treatment" in that he informed or implied to Dombris that he had corrected the diseased condition of the rectum when he had not done so; "dishonorable treatment" in that he had insisted on the payment of an exorbitant fee for services to be considered scarcely more than an office treatment; "unprofessional treatment" in that throughout the treatment he had behaved in a manner not compatible with the established standards of medical professional conduct in this state; and "incompetence" in that his background and training did not justify his claim and statement that he was a specialist in the treatment of diseases of the rectum, that he did not precede the treatment with an enema and neglected to sterilize a speculum used by him in the operation, and that he did not perform the relatively simple procedure which was indicated for the relief of the condition in question and which when later followed by a skillful and competent surgeon resulted in its eradication. When on the trial of the appeal the recommendation of the board containing these statements was offered in evidence, the plaintiff objected substantially on the ground that it was matter occurring after the hearing which was not communicated to him and of which he had no knowledge until it was offered in evidence.

The statute to which we have referred provides for the holding of hearings by the board and the making

of recommendations to the state department of health but contains no requirement that the board shall make a finding of facts upon the basis of which it acted. In the similar case of appeals from zoning boards, we have said that, while a finding of the facts on which the board acted was not required by the statutes, "a full and complete statement in the minutes of the board's action, made with such particularity as to enable the court upon appeal to clearly understand what was done, is highly desirable." *Grady* v. *Katz,* 124 Conn. 525, 530, 1 A. 2d 137. In this instance the board, instead of including in its minutes the grounds of its decision, incorporated them in the recommendation it made. The statement was properly before the court to enable it to understand the basis of the board's action; and if the plaintiff was unduly surprised he might have asked a continuance, which, for cause shown, the trial court would no doubt have granted.

The facts stated in the findings of the board, as distinguished from its conclusions characterizing the conduct of the plaintiff, were supported by the testimony of Dombris at the hearing, and, while they were in part disputed by the plaintiff, the credibility to be accorded the two witnesses was a matter for the determination of the board. See *Winzler* v. *United Aircraft Corporation,* 132 Conn. 118, 120, 42 A. 2d 655. The basic claim of the plaintiff is that the decision of the board involved certain conclusions which no evidence offered at the hearing supported but which the board reached upon the basis of its own understanding of the obligations of the plaintiff as a medical practitioner in this state. This contention is not involved in at least one of the conclusions of the board. While one might question the characterization "fraudulent" as applied to the conduct of the plaintiff in stating, or at least implying, to Dombris that the

diseased condition had been corrected by the operation when in fact it had not, certainly that conduct was very wrong. In *Sage-Allen Co.* v. *Wheeler,* 119 Conn. 667, 678, 179 A. 195, we said, of a statute authorizing the revocation of a license to practice optometry on the grounds of "immoral," "dishonorable" and "unprofessional" conduct, that these words in themselves had too uncertain a meaning to be a basis upon which a license could be revoked; and we stated (p. 679): "The words must have been used in the light of the fundamental purpose of the statutes to regulate the profession in the public interest, and they can only be construed as intending to include conduct within their fair purport which either shows that the person guilty of it is intellectually or morally incompetent to practice the profession or has committed an act or acts of a nature likely to jeopardize the interest of the public." See also *Lieberman* v. *Board of Examiners in Optometry,* 130 Conn. 344, 346, 34 A. 2d 213. Certainly statements made by a physician or surgeon to a patient suffering from such a diseased condition as that involved in this case that it had been remedied when it had not might well be regarded by the board as conduct not only wrongful but of a nature likely to jeopardize the public. If we could conclude that the various grounds stated by the board as a basis of its action were regarded by it as each independently justifying the revocation of the certificate, we would have no need to go further in sustaining its action. But its final decision was apparently based upon the cumulative effect of the various conclusions it reached and if in others which were material it acted erroneously we could not uphold its decision.

Giving the contention of the plaintiff its widest possible scope, it comes to this: There was no evidence offered before the board that the charge made by the

plaintiff was excessive, that his conduct was not compatible with "the standards of medical professional conduct" in this state, that his claim to be a specialist in the treatment of diseases of the rectum was not warranted by his own testimony, and that he was negligent in not giving an enema before the operation and in not sterilizing the speculum he used. The statute before referred to, § 476f, contains provisions as to the rights of a physician or surgeon summoned before the board to answer to a complaint, and of the board as regards the hearing which is to be accorded him.[1] In *Reardon* v. *Dental Commission*, 128 Conn. 116, 20 A. 2d 622, we considered somewhat similar provisions as regards a hearing to be held by the defendant before a license to practice dentistry could be suspended or revoked. In that case the charge was that the plaintiff had been guilty of improper advertising upon the building where his office was located and by means of folders and cards; and it appeared that members of the commission had, before the hearing, personally investigated the conditions at the plaintiff's office. A–164 Rec. & Briefs, back of p. 561. We said (p. 119): "Such investigation might well lead them to approach the hearing with a preconceived idea of the guilt or innocence of the accused. He would, very likely, be placed in the position of having to overcome, by evidence he might produce, this idea. Moreover,

---

[1] The practitioner against whom a charge is filed shall have a right to a hearing before the board having jurisdiction, may appear in person or by counsel, or both, may produce witnesses and evidence in his behalf, and may question witnesses. The board may subpoena witnesses and papers in its own behalf and, if requested by the practitioner, may subpoena witnesses and papers in his behalf, may administer oaths, may compel the testimony of witnesses and may examine witnesses. It may issue commissions to take testimony and the testimony so taken and sworn to shall be admissible in evidence for and against the practitioner.

such an investigation would be apt to result in a violation of that requirement of due process of law that one called upon to answer shall be confronted with the evidence against him. *Interstate Commerce Commission* v. *Louisville & Nashville R. Co.,* 227 U. S. 88, 93, 33 Sup. Ct. 185; *Ungar* v. *Seaman,* 4 Fed. (2d) 80, 82; *United States and Interstate Commerce Commission* v. *Abilene & Southern Ry. Co.,* 265 U. S. 274, 289, 44 Sup. Ct. 565."

In the *Interstate Commerce Commission* case the government (p. 93) claimed that, as the commission was required by statute to obtain information necessary to enable it to perform its duties, it could act on such information, and hence, even though evidence offered before it would not sustain its finding, it must be presumed to have been supported by information obtained by the commission through its own investigation; but the court refused to uphold that contention, saying: "The Commission is an administrative body and, even where it acts in a quasi-judicial capacity, is not limited by the strict rules, as to the admissibility of evidence, which prevail in suits between private parties. *Int. Com. Comm.* v. *Baird,* 194 U. S. 25. But the more liberal the practice in admitting testimony, the more imperative the obligation to preserve the essential rules of evidence by which rights are asserted or defended. In such cases the Commissioners cannot act upon their own information as could jurors in primitive days. All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense. In no other way can it test the sufficiency of the facts to support the finding; for otherwise, even though it

appeared that the order was without evidence, the manifest deficiency could always be explained on the theory that the Commission had before it extraneous, unknown but presumptively sufficient information to support the finding." See note, 123 A. L. R. 1349.

In passing, we note that the trial court in its memorandum of decision refers to *Mrowka* v. *Board of Zoning Appeals,* 134 Conn. 149, 55 A. 2d 909, where (p. 154) we concluded that the trial court in considering an appeal from the board had taken into consideration the fact that its members had personally made observations of the location and conditions involved in the controversy and we said: "It is not claimed that in so doing they acted improperly. They were entitled to regard the facts so learned by them to the same extent as though they were offered in evidence before them." The situation presented in that case was the same as that where a court views premises involved in a case before it with the express or tacit consent of the parties to the action, as appears from our citation of *Albright* v. *MacDonald,* 121 Conn. 88, 91, 183 A. 389, in support of the statement. That decision is of no assistance in solving the problem now before us.

The decisions from which we have quoted sustain the contention of the plaintiff unless there is a distinction between the facts referred to in them and the conclusions of the board in this case as regards its rulings that the plaintiff's charge to Dombris was excessive, that his conduct was not compatible with the standards of medical professional conduct and that he was incompetent. The only testimony which could be offered before the board to support these conclusions would be the opinions of expert witnesses, and these opinions would merely serve the purpose of enlightening the board so that it could more justly arrive at its own decision upon the issues. Of the opinions of ex-

perts as to the value of real estate, we have said: "The purpose of offering in evidence the opinions of expert witnesses as to such matters as land values is to aid the trier to arrive at his own conclusion, which is to be reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value, and his own general knowledge of the elements going to establish it"; *Appeal of Cohen,* 117 Conn. 75, 85, 166 A. 747; *Cohn* v. *Hartford,* 130 Conn. 699, 705, 37 A. 2d 237; and the same principle applies as to other expert opinion evidence. *State* v. *Levy,* 103 Conn. 138, 146, 130 A. 96; *Stevenson* v. *Moeller,* 112 Conn. 491, 495, 152 A. 889. Wigmore maintains that the ultimate test of the admissibility of opinion evidence is whether it will aid the trier in arriving at his decision; 7 Wigmore, Evidence (3d Ed.) § 1918; and in support of that thesis, as regards the opinions of experts, he quotes (§ 1923) *Loomis, J.,* in *Taylor* v. *Town of Monroe,* 43 Conn. 36, 44: "The true test of the admissibility of such testimony is not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of the matter, but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the Court or jury in determining the questions at issue."

The statutes provide that the medical examining board shall consist of five members, that the Connecticut Medical Society shall each year file with the governor the name of one physician practicing in this state whom it recommends as competent to serve on the board, and that the governor shall appoint the person so recommended for a term of five years. General Statutes, Cum. Sup. 1935, § 1122c (Rev. 1949, § 4365). In providing this method of appointment the legisla-

ture undoubtedly intended that the membership of the board should consist of men fitted by training and experience to perform the duties and responsibilities imposed upon it. We would presume—even if we did not know—that the men composing the board were themselves qualified to decide whether certain conduct of a physician or surgeon so derogated from professional standards as unreasonably to jeopardize the interests of the public; and upon that basis they were entitled to act. Where a court has been called upon to determine the reasonable value of the services of an attorney, we have said: "Courts have a general knowledge of what would be reasonable compensation for services which are fairly stated and described. That knowledge they may apply in considering the testimony of experts upon this subject. They will not be bound by the experts' estimate." *Gruskay* v. *Simenauskas*, 107 Conn. 380, 387, 140 A. 724; *Taft* v. *Valley Oil Co.*, 126 Conn. 154, 161, 9 A. 2d 822. The same principle applies to the medical examining board. Expert opinions of other physicians offered before it could have been disregarded by it, and from a practical standpoint would in all probability have had little, if any, effect in bringing it to a decision at variance with its own conclusion upon the question whether or not the conduct of a practitioner had been compatible with professional standards or whether or not he was competent. With the facts of that conduct before it, the board was competent to determine such questions without hearing expert opinion evidence. It is true that where, in cases tried in court, an issue presented is such that its solution can only be reached upon the basis of the special knowledge of expert witnesses, such evidence must be produced. *Sickmund* v. *Connecticut Co.*, 122 Conn. 375, 379, 189 A. 876. That rule, however, supports rather than contravenes our

conclusion in this case because it is based on the fact that such a question goes beyond the field of the ordinary knowledge and experience of judges or jurors; *Slimak* v. *Foster,* 106 Conn. 366, 369, 138 A. 153; and this is illustrated by our decisions holding that where an issue can be determined by the application of such knowledge expert testimony is not required. *Gannon* v. *S. S. Kresge Co.,* 114 Conn. 36, 38, 157 A. 541; *Sapiente* v. *Waltuch,* 127 Conn. 224, 227, 15 A. 2d 417. So in this case, as we must presume the members of the board to have been competent to determine the issues upon the basis of their own knowledge and experience, the offer of expert testimony was not necessary. We should add, however, that the person under charges has the right to offer expert opinions at the hearing before the board; it is bound to admit such evidence; and it would be obliged to consider it in arriving at its conclusions.

We are confirmed in our conclusion that it was not necessary that expert opinion evidence should be offered before the board by the opinion in *Market Street R. Co.* v. *Railroad Commission,* 324 U. S. 548, 65 S. Ct. 770, 89 L. Ed. 1171. The court was considering a claim that there had been a cónfiscation of property of the plaintiff street railway company, in violation of the due process clause of the United States constitution, by reason of an order of the railroad commission of California, confirmed in the courts of that state upon appeal, which required the company to reduce its fares. One of the claims of the plaintiff was (p. 559) that the conclusion of the commission was unsupported by evidence and was based on speculation and conjecture. The court pointed out that there was factual evidence before the commission, and it said (p. 560): "This is not a case where the data basic to a judgment have been withheld from the record. The

complaint is that the Commission formed its own conclusions without the aid of expert opinions. It is contended that the Commission should draw conclusions from these facts only upon hearing testimony of experts as to the conclusions they would draw from the facts of record. Experts' judgments, however, would not bind the Commission. Their testimony would be in the nature of argument or opinion, and the weight to be given it would depend upon the Commission's estimate of the reasonableness of their conclusions and the force of their reasoning. There is nothing to indicate that any consideration which could be advanced by an expert has not been advanced by the Company in argument and fully weighed. We cannot say that it is a denial of due process for a commission so experienced as the record shows this Commission to have been with the affairs of this particular appellant to draw inferences as to the probable effect on traffic of a given rate decrease on such a record as we have here."

We have not overlooked the case of *McKay* v. *State Board*, 103 Colo. 305, 86 P. 2d 232. In that case it was held that the action of the state medical board in revoking licenses of physicians on grounds similar to those alleged in this case could not be sustained in the absence of evidence offered before it that the conduct of the physicians was not proper, judged by sound and recognized medical standards. The court said (p. 315): "The board says that in its opinion it was not, but until there was competent evidence to support it, the board was not authorized to form such an opinion and exceeded its authority in so doing." It appears in the opinion in that case (p. 313) that the method of review of actions of the board provided by the statute was by writ of certiorari, which brought up only the record of the proceedings before the board,

and the real basis of the opinion was (pp. 313, 314, 317) that in the absence of such evidence the court was without adequate means to review the action of the board. Thus the court said (p. 313): "Obviously the reviewing court cannot be left to speculate on what was in the minds of the individual board members as constituting improper diagnosis or treatment." The difficulty with this reasoning is that, as opinion evidence offered before the board would in no way be binding upon it and the ultimate decision would be based upon the board's own conclusions, the evidence would not with any certainty show the basis upon which it finally reached its decision. The only way the reasons which actuated it in its ruling can be definitely placed on record is by such a statement as that embodied in this case in the recommendations to the health department. As matter of proper procedure, we point out, however, that the place where the conclusions of the board should be stated is in its own minutes. The notice of charges against a practitioner to which he is to answer before the board should state them with sufficient particularity so that he may be fairly apprised of the nature of the offense with which he is charged. If this is done, and the board in its minutes has stated with reasonable certainty the conclusions it has reached, the court on appeal can know the basis upon which it acted.

This brings us to a consideration of the right of appeal from the board given by the statute. General Statutes, Rev. 1930, § 2743 (Rev. 1949, § 4360). It is there provided that upon an appeal the court "may grant such relief as to equity may appertain." The amicus curiae maintains that this provision creates a distinction between an appeal from a medical examining board and those ordinarily granted from administrative boards, and that in this case the court has

plenary power to determine de novo whether the certificate should be revoked. On an appeal from an administrative board we have repeatedly stated that the function of the court is to determine whether or not it acted illegally; and while we have frequently added the words "arbitrarily or in abuse of its discretion," this manner of expression merely points to certain aspects in which the illegality may subsist because the conduct of the board would be in violation of the powers granted to and duties imposed upon it. *Modeste* v. *Public Utilities Commission,* 97 Conn. 453, 459, 117 A. 494; *Colonial Beacon Oil Co.* v. *Zoning Board of Appeals,* 128 Conn. 351, 354, 23 A. 2d 151. In the former case it is pointed out that, under the division of powers between the branches of government provided in our constitution, administrative functions as such cannot be vested in the courts. The revocation of a certificate of registration granted to a physician and surgeon is just as much an administrative matter as is the original grant of it. *Brein* v. *Connecticut Eclectic Examining Board,* 103 Conn. 65, 83, 130 A. 289; *Kram* v. *Public Utilities Commission,* 126 Conn. 543, 549, 12 A. 2d 775. Neither directly nor in the guise of an appeal can authority be vested in a court to determine upon its independent judgment the question whether or not a certificate should be revoked; the court can act only in so far as judicial questions are involved; and on appeal it can review administrative action only so far as to determine whether any illegality has entered into it. Where upon an appeal the court hears evidence it is solely for the purpose of determining that question; *Colonial Beacon Oil Co.* v. *Zoning Board of Appeals,* supra; even where a statute required that an appeal should be tried de novo, we held that the court should make an independent inquiry into the facts but only for the purpose

of exercising that function. *DeMond* v. *Liquor Control Commission,* 129 Conn. 642, 645, 30 A. 2d 547. Authority given to the court on appeals from the revocation of a certificate of registration to practice medicine and surgery to "grant such relief as to equity may appertain" must be construed to avoid the constitutional limitations upon the power of our courts independently to determine administrative matters. *Kram* v. *Public Utilities Commission,* supra. The word "equity" in the statute obviously was not intended to refer to the established system of equitable jurisprudence. We can give to the word only its broader meaning of that which is right and just; *In re Curtis-Castle Arbitration,* 64 Conn. 501, 512, 30 A. 769; and we must hold that the legislature did not intend to authorize the courts on an appeal from the revocation of a certificate to exercise any other power than to review the proceedings before the board to determine whether they were in all respects legal.

Under our procedure one appealing from the action of an administrative board under a statute which does not otherwise provide may, if the record before the board does not sufficiently disclose the basis of its action, offer evidence before the court as to the facts, and the court will act on the assumption that they were the basis upon which the board reached its decision. *Skarzynski* v. *Liquor Control Commission,* 122 Conn. 521, 526, 191 A. 98; *Grady* v. *Katz,* 124 Conn. 525, 530, 1 A. 2d 137. On an appeal from the medical examining board, if no expert evidence was offered before it, the appellant may produce such evidence before the court, and it would then test the decision of the board in the light of it. With adequate notice to the person charged specifying the grounds of complaint, with a statement in the records of the board showing the basis upon which it acted, and with the

right he has, where expert evidence is not offered before the board, to submit such testimony to the court on appeal, his rights are adequately protected. *Brein* v. *Connecticut Eclectic Examining Board,* supra, 84; *Mower* v. *State Department of Health,* 108 Conn. 74, 78, 142 A. 473; *Hurwitz* v. *North,* 271 U. S. 40, 42, 46 S. Ct. 384, 70 L. Ed. 818, with comment on that case in *Kram* v. *Public Utilities Commission,* supra; *Crane* v. *Hahlo,* 258 U. S. 142, 148, 42 S. Ct. 214, 66 L. Ed. 514; *In re Van Hyning,* 257 Mich. 146, 151, 241 N. W. 207. Expert evidence may be offered before the court by the board in support of its conclusions and by the doctor in an attack upon them, and it is then for the court to determine the appeal upon the evidence before it.

The plaintiff makes no claim that the conclusion of the board that there was no proper basis for his claim to be a specialist in the diseases of the rectum stands on any different ground than do the other conclusions we have discussed, and we have no occasion to consider whether or not that is so. The plaintiff also refers to the answer to his reasons of appeal where it is stated that he was not charged with negligence or unskillfulness as a basis for revoking his certificate. Habitual negligence is specified in the statute as a ground for revocation; General Statutes, Sup. 1941, § 475f (Rev. 1949, § 4358); that was not charged; but incompetence was alleged; and the board was entitled to consider, as it did, any negligence in the treatment of Dombris as evidence of incompetence. We cannot hold that, in view of its conclusions, the board abused its discretion in recommending the revocation of the plaintiff's certificate rather than its suspension or the imposition of one of the other forms of discipline provided in § 476f (Rev. 1949, § 4359).

The plaintiff claimed in the trial court that the only

matters open for consideration by the board were those included in the "Summary of Complaint" sent to his attorney by the assistant attorney general in response to the former's request for a more specific statement. The transcript of the hearing before the board shows, however, that at the very beginning the assistant attorney general introduced in evidence the sworn statement of the commissioner of health charging that the plaintiff had treated Dombris in a fraudulent, dishonorable, unprofessional and incompetent manner, that the plaintiff expressly stated that he had no objection to it, that no objection was made to any of the evidence offered to support that charge and that the "Summary of Complaint" was never produced before the board. Under such circumstances the plaintiff must be deemed to have waived before the board any claim that the inquiry was limited to the statements in that summary. *Spitz* v. *Abrams,* 128 Conn. 121, 124, 20 A. 2d 616; Conn. App. Proc. § 28.

There is no error.

In this opinion the other judges concurred except DICKENSON, J., who, by agreement of counsel, took no part in the decision.