## Forbes S. Adam v. The Connecticut Medical Examining Board and State Department of Health

Superior Court      Litchfield County      File No. 12275

Memorandum filed August 18, 1949.

*David Cramer,* of Litchfield, *Sully I. Berman,* of Sharon, and *Day, Berry & Howard,* of Hartford, for the Plaintiff.

*William L. Hadden,* Attorney General, and *Harry L. Brooks,* Assistant Attorney General, of Hartford, for the Defendants.

QUINLAN, J.   Under the provisions of General Statutes, § 4360, the plaintiff has appealed from a revocation of his license to practice medicine in this state under the provisions of §§ 4358 and 4359, following a hearing and recommendation of revocation by the board to the state department of health.

The procedure is controlled by *Perdue* v. *Zoning Board of Appeals,* 118 Conn. 174, 178, but notwithstanding the defendant opened the case.   The exhibits and transcript of the evidence before the board are the evidence in the case, with the exception of the expert testimony offered before the court.   As to the latter, under the case of *Jaffe* v. *State Department of Health,* 135 Conn. 339, such evidence would be of little compelling effect, if the medical board can act, as it may, on its own professional knowledge.   However, there seems to be little need of discussing the evidential problems involved, because the plaintiff was confronted with certain charges which resulted in certain findings and conclusions.

It should be borne in mind that the credibility of witnesses, the determination of questions of fact, and the forming of conclusions in an administrative proceeding of this nature are for (in this case) the Connecticut medical examining board.   *Jaffe* v. *State Department of Health,* supra, and see *Winzler* v. *United Aircraft Corporation,* 132 Conn. 118, 120.   Any evidence received by me was merely for the purpose of testing the legality of that board's action, although highly respectable authority testified for the plaintiff doctor and the defense.

Furthermore, the issue now presented is different from that before Judge Inglis.   Incidentally, the memorandum of Judge Inglis was appended to the brief of the amici curiae in the *Jaffe* case, supra, with the resultant principles announced in that case, which had not been decided at the time Judge Inglis had the supersedeas application in this proceeding before him.

The sole question, then, before me is one of law, the decision of which involves in no way my approval or disapproval of the conduct of the plaintiff.   Stated in legal terms, the question is: Were the conclusions reached by the board illegal, arbitrary, capricious or in abuse of discretion?

It must be remembered in passing on the questions involved here that the board is not a lay board in the ordinary sense, but a professional board, and that the rules concerning the admissibility of evidence before such a board are more liberal.   Never-

theless, the statute fixes the acts upon which a revocation must be based. The statute is both penal and remedial, and, as above suggested, its construction is a matter of law. *Lutkevicz v. Brennan,* 128 Conn. 651, 653; *State v. Nelson,* 126 Conn. 412; *State Board of Medical Examiners v. Wooding,* (N. J.) 135 A. 785, 786. At once the importance of the questions involved is made obvious both to the plaintiff doctor and to the state of Connecticut, because the penal nature of the statute terminates the professional status of the plaintiff and its remedial aspect concerns the public interest.

Three steps of inquiry are indicated: (1) What were the charges? (2) What act does the statute provide for revocation? (3) On the findings made upon the evidence, are the conclusions justified in the light of the statute?

(1) In effect, it is charged that unnecessary surgical operations were performed upon Mrs. Arthur Gordon and James Nally; ruthless, cruel, corrupt and negligent treatment to their detriment of Mrs. Everett Brady and son, James Nally and Mrs. Gordon; and the making of incorrect diagnoses in a reckless and careless manner. Then there are the general charges of dishonorable and unprofessional conduct.

(2) The statute fixes the following provisions as acts warranting suspension, annulment or revocation: For a court conviction of any crime involving moral turpitude, any infamous crime or any crime in the practice of his profession; immoral, fraudulent, dishonorable or unprofessional conduct; illegal, incompetent or habitually negligent conduct; habitual intemperance; deceptive, misleading, extravagant, improbable or untrue advertising; aiding or abetting the unlawful practice of the healing arts; failure to record a license; insanity of the practitioner; fraud or deception in obtaining a license.

(3) In its finding and vote, the Connecticut medical examining board states: "In arriving at its decision, the Board considered each count and allegation separately and independent of all other counts and allegations."

It must be noted that these findings as to individual counts or allegations arrive at conclusions of an *unnecessary operation* on Mrs. Arthur Gordon, treatment in a *ruthless* and *wantonly negligent* manner of Mrs. Everett Brady, *gross negligence* in his care and treatment of Mrs. Everett Brady and her infant son to their detriment, treating James Nally in a *careless* and *negligent*

manner to his detriment, and the treating of Mrs. Gordon in a *cruel* and *grossly negligent* manner and to her detriment, and rendering *careless and improper* medical treatment to Mrs. Everett Brady and her infant son.

This recital reveals that, if considered separately and independently as to each count, nowhere is there a finding of dishonorable and unprofessional conduct. It is not until the end of the finding and in the announcement of the vote that these words appear, together with a finding of wanton negligence. Gross negligence and wanton negligence concern legal concepts. Wanton misconduct is in the field of criminal law; *Meyer* v. *Hart,* 110 Conn. 244, 246; *Decker* v. *Roberts,* 125 Conn. 150, 157; plaintiff is not charged with a crime, and our common law does not include gross or wanton negligence or recklessness. See *Dickerson* v. *Connecticut Co.,* 98 Conn. 87, 89; *Bondonaro* v. *Senk,* 109 Conn. 428. But, in any event, the statute fixes but one ground based on negligence and that is "habitually negligent conduct." § 4358. Not only is no such finding or conclusion reached, but plaintiff was not charged with such offense and there are no subordinate findings of fact to warrant such a conclusion. In this there was error. Habitual negligence by the very use of the words connotes a regular and fixed mode of action. Funk & Wagnalls New Standard Dictionary defines "habitual" as "Of, pertaining to, or constituting a habit; done or recurring constantly, frequently, or as if by habit; following usual practice . . . ." Under these definitions, had habitual negligence been charged, negligence, whatever its nature, occurring over a period of two or three years and confined to two or three parties, as Judge Inglis said in his memorandum, "falls short of being the equivalent of a finding of habitual negligence."

In the *Jaffe* case, supra, 355, it was said that the doctor there was charged with incompetence, but is not so charged here specifically, and that "the board was entitled to consider, as it did, any negligence in the treatment . . . as evidence of incompetence." But there the board found the doctor incompetent, while here there is no such finding or conclusion. Indeed, it is quite conceivable that a competent person might be negligent.

We return again, then, to the conclusion that the plaintiff was guilty of "dishonorable" and "unprofessional" conduct. In the case of *Sage-Allen Co.* v. *Wheeler,* 119 Conn. 667, 678, it was held that these words in themselves had . . . "too uncer-

tain a meaning to be a basis upon which a license could be revoked," and that they can only be construed as intending to include conduct within their fair purport which neither shows that the person guilty of it is intellectually or morally incompetent to practice the profession or has committed an act or acts of a nature likely to jeopardize the interests of the public, (p. 679) and, applying that language in the *Jaffe* case, it was found that the conduct of the doctor might be regarded by the board as wrongful and likely to jeopardize the public.

Presumably, on the authorities already cited, this specialized board would be warranted in so using the evidence in this case. The difficulty, however, is that the various grounds stated for the board's action, if treated independently of one another, nowhere conclude that plaintiff was guilty of dishonorable an unprofessional conduct, and it is only in the general finding at the end thereof that they appear, so that that finding must be "the cumulative effect" of its various conclusions and it has been pointed out that the board erred in its negligence findings, which were evidently material ones. At least there is an inconsistency.

In passing, it must be observed that the plaintiff was absolved of thirteen charges, but nowhere does it appear as a finding or conclusion in the guilty findings that he was intellectually or morally incompetent and likely to jeopardize the public interest.

In conclusion, there is another thought to add. The history of the statute indicates that originally there was only power of revocation in the limited field of fraud in the procurement of the medical license, and conviction of a crime in professional practice or of a felony. When suspension and annulment were added to the power of revocation by amendment in 1927, the grounds were also amplified, including among others, dishonorable and unprofessional conduct. All this immediately suggests that perhaps the original field of grounds bore a closer relationship to revocation than those added in 1927, notwithstanding the right conferred on the board to suspend, annul or revoke for any of the causes enumerated. There is no way for the court to know what weights are attached to the various grounds in the mind of the board. It is academic, however, because while our appeal statute in such cases provides that the "court may grant such relief as to equity may appertain," our Supreme Court has said in the *Jaffe* case supra, 354, that such language "did not intend to authorize the courts . . . to exercise

any other power than to review the proceedings" to determine if they were in all respects legal. It is not for me to impose my ideas of discipline. Of course, it would not be academic if the penalty exceeded the offense, since that would mean that, while decisive, the result was unreasoned and hence arbitrary.

I have tried to adhere to my function as laid out by the Supreme Court and, if the disposition appears technical, I am, after all, passing upon a penal statute which is to be strictly construed not to enable a person to avoid the clear import of a law, through some mere technicality, but to enable the people of the state to know clearly and precisely what acts the legislature has forbidden under a penalty, so that they may govern their conduct accordingly. This is a notation from a criminal case that seems apt to this sort of situation.

In view of my conclusions, I deem it unnecessary to discuss two points of testimony. So far as argument before the board was concerned, it suffices to say it was never objected or excepted to.

The appeal is sustained, and judgment may enter for the plaintiff.