[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative appeal from a decision of the defendant Connecticut Board of Examiners of Psychologists (hereinafter "Board") imposing sanctions against the plaintiff based upon a finding that the plaintiff had engaged in negligent, incompetent or wrongful conduct as a psychologist in violation of Conn. Gen. Stat. § 20-192.
The facts are as follows: In 1991 Stephanie Michaels filed a complaint with the Connecticut Department of Public Health ("Department") against plaintiff Alan P. Towbin, Ph.D., a licensed psychologist. After investigation, the Department concluded that probable cause existed to support a violation of Conn. Gen. Stat. § 20-192 and issued a statement of charges against the plaintiff. A contested case hearing was held before the Board in accordance with § 4-166 et seq. Plaintiff was represented by counsel and given the opportunity to respond to the charges, to cross examine witnesses, and to present evidence and argument on all issues involved in the case. The hearing took place over five days. The Board, consisting of one professional member and two public members, issued a final decision concluding that the Department had proven that the plaintiff had engaged in impermissible dual social and sexual relationships with Ms. Michaels. The plaintiff filed an appeal to the Superior Court under § 4-183 (a) and also petitioned for reconsideration by the Board, in which he claimed the Board's decision was not supported by expert opinion evidence and that the order requiring psychotherapy was an illegal condition of probation. The Board granted the plaintiffs petition for reconsideration, mooting plaintiffs appeal to the Superior Court. The Board also informed the parties that in rendering its new decision, it would be composed of a majority of professional members. In light of the new composition of the Board, it extended to the plaintiff the opportunity to present additional expert evidence on the issue of the standard of professional conduct of a psychologist to be applied to the facts of this case. The plaintiff availed himself of the opportunity to offer an expert on that issue, but the Board denied him the opportunity to testify at the second hearing. The Board issued a proposed final decision on May 26, 1998 to which the parties were given the opportunity to file exceptions and present briefs and oral argument. The Board issued its final decision on June 12, 1998.
That decision made the following findings of fact: The plaintiff CT Page 6417 provided professional psychological care and treatment to Michael Michaels, Jr. between February and June, 1984. Michael's date of birth is April 13, 1967, so he was then between 17 and 18 years old. During the course of the treatment, the parents of Michael, Ms. Michaels and her husband, met a number of times with the plaintiff. In October of 1985 the plaintiff and Ms. Michaels started a social and sexual relationship that lasted until approximately March of 1986. This included staying together at a Branford motel, at a Boston hotel, and having sex at his office several times a week during part of this period. Prior to the termination of that sexual relationship, the plaintiff had arranged for Ms. Michaels 13 year old son Christopher to be tested by him. That testing took place and Ms. Michaels met with the plaintiff to discuss Christopher's treatment within a few days of the termination of the relationship.
The Board heard David Greenfield, a Ph.D. in psychology, as an expert on the standard of professional conduct of psychologists. Dr. Greenfield opined, and the Board agreed, that dual relationships exist when a psychologist and his/her patient have another relationship not specific to the therapy. Psychologists are ethically bound to avoid dual relationships that could impair their professional judgment or increase the risk of exploitation of clients, patients, or consumers. Dr. Greenfield opined, and the Board agreed, that by the plaintiff engaging in a dual social and sexual relationship with Ms. Michaels, he thereby violated the ethical standards of conduct in place for psychologists practicing in Connecticut in 1985-1986. Such violation occurred despite the fact that the dual social and sexual relationships existed when Michael Michaels, Jr. was no longer in treatment with the plaintiff and no longer a minor.
In its decision, "the Board credited Ms. Michaels' testimony that she and [plaintiff] had a sexual relationship . . ." and that plaintiff "was not credible with regard to the nature of his relationship with Ms. Michaels". The Board concluded that by plaintiff becoming sexually involved with Ms. Michaels seven months after serving as a consultant for her first child, somewhat over twelve months after treating such child as a patient, and prior to the subsequent care and treatment of her second child, he engaged in inappropriate conduct for a therapist and "represents a clear violation of the standard of care."
The Board further concluded that plaintiff presents a danger to the public at this time and that the plaintiff engaged in "negligent, incompetent or wrongful conduct as a psychologist and accordingly violated Conn. Gen. Stat. § 20-192."
The Board entered an order that the plaintiff be placed on probationary status indefinitely with the following restrictions and conditions: (1) CT Page 6418 while on probationary status, plaintiff shall not render treatment to patients or clients in any setting except providing individual and group therapy to nursing home patients and consulting with nursing home staff regarding psychological issues; (2) after at least one year on probationary status plaintiff may come before the Board to request that the Board withdraw probation or modify the terms of probation; (3) one method the plaintiff may utilize, but is not required to utilize, in attempting to convince the Board that probation should be withdrawn or its terms modified is as follows: (a) the plaintiff may undergo a psychological evaluation by an independent licensed psychologist approved by the Department; (b) if the evaluating psychologist determines therapy would be beneficial, the plaintiff should engage in individual psychotherapy on a clinically recommended schedule for at least one year of his probation; (c) prior to coming before the Board the plaintiff should undergo a psychological re-evaluation. The order further provided that plaintiff should not come before the Board more frequently than once a year to request that his probation be modified or withdrawn, and the Board may withdraw probation or modify the terms of probation if, in its discretion, the Board finds that the circumstances which required action by the Board have been sufficiently remedied. Finally the Board assessed a civil penalty of $10,000, payment of said sum to be stayed for as long as the plaintiff complies with his probation, and imposition of the civil penalty shall be withdrawn upon satisfactory completion of all conditions of plaintiffs probation.
The plaintiff appeals the decision and order of the Board on the following grounds: (1) the Board erred in disbelieving the plaintiffs testimony and finding it implausible; (2) the Board erred in finding the plaintiffs conduct violated the standard of conduct; (3) the Board erred in finding that plaintiffs continuing to practice psychotherapy presents a danger to the public; (4) the Board's decision is erroneous in that members of the Board who decided the case had not heard the testimony of witnesses; (5) the penalty imposed is excessive; (6) the plaintiff was denied due process of law because of the long delay between plaintiffs improper conduct and the decision of the Board.
Each of these grounds will be considered below seriatim. However, first, the standard of review in a case of this nature must be stated. Connecticut General Statutes § 4-183 (j) provides that: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. . . . The court shall affirm the decision of an agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions or decisions are . . . clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." As stated in Board of Education v. Freedom ofCT Page 6419Information Commission, 208 Conn. 442, 452 (1988), "Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally or in abuse of [its] discretion."
Administrative findings are supported by substantial evidence if the record affords a substantial basis in fact from which the facts in issue can be reasonably inferred. "Such a standard of review allows us less room for judicial scrutiny than does the `weight of the evidence' rule or the `clearly erroneous rule' . . . In determining whether an administrative finding is supported by `substantial evidence' a court must defer to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part." Briggs v.State Employees Retirement Commission, 210 Conn. 214, 217 (1989).
 I.
The first ground of appeal is that the Board erred in disbelieving the plaintiff and finding his testimony implausible. The plaintiff, in his brief, argues that the Board chose to disbelieve the plaintiffs testimony as to the sexual relationship he had with Ms. Michaels and therefore found that such a relationship had existed. The plaintiff attempts to invoke the principle stated in Tait and Laplante's Handbook ofConnecticut Evidence, (2nd Ed. 1988, Section 8.2.4) to the effect that "if a witness testifies to `white' and the trier disbelieves that witness, it is not permitted to find `black' without affirmative evidence to that effect."
However, this is not what the Board did. It made a specific finding that it "credited Ms. Michaels' testimony that she and [plaintiff] had a sexual relationship, although the Board did not perceive the specific details she recounted were completely accurate. The [plaintiff] was not credible with regard to the nature of his relationship with Ms. Michaels. [Plaintiff's] overwhelming failure to provide a plausible explanation confirms the Board's conclusion that he and Ms. Michaels were engaged in a sexual relationship."
The transcript is replete with repeated testimony of Ms. Michaels that she had sexual relationship with the plaintiff in a Branford motel, in a Boston hotel and in plaintiffs office. The Board chose to believe this testimony and it had every right to do so. Plaintiffs failure to provide a plausible explanation of his relationship with Ms. Michaels confirmed the Board's conclusion that he and Ms. Michaels had a sexual relationship, but was not the basis for that finding. Plaintiffs claim that the Board erred in finding plaintiffs testimony is implausible has CT Page 6420 little merit because Connecticut General Statutes § 4-183 (j) clearly provides that the reviewing court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." The credibility of witness and determination of issues of fact are matters with the province of the administrative agency. Fishbein v.Kozlowski, 48 Conn. App. 552, 554 (1998). Here the credibility determination of the Board may not be disturbed on appeal.
 II.
The plaintiffs second ground of appeal is that the Board erred in finding that the plaintiffs conduct violated the standard of conduct required of psychologists.
At the hearing, David Greenfield, Ph.D. and licensed psychologist, testified as an expert on the ethical principles psychologists are required to adhere to. Specifically, he testified that psychologists are forbidden to have dual relationships with patients or parents of patients. He defined dual relationships as a doctor/patient relationship complicated by other relationships that are not specific to the therapy. This included social and sexual relationships. These relationships are forbidden "because of the potential to either exploit the relationship or not be able to provide the objectivity and expertise that is necessary in rendering your professional services." These relationships are forbidden even after treatment has ended and even if the child patient subsequently reached the age of 18. Dr. Greenfield also stated that plaintiff violated the standard of conduct in providing professional services to Ms. Michaels' other minor son Christopher after the relationship ended because "he therefore can no longer claim he was an objective participant in the process of working with the child."
The plaintiff presented two other psychologists who differed with Dr. Greenfield on the issue of whether or not the plaintiff violated the standard of conduct.
The Board chose to believe and rely upon Dr. Greenfield's opinion. In its decision the Board concluded that the psychologists are ethically bound to avoid dual relationships that could impair their professional judgment or increase the risk of exploitation of clients, patients or consumers. It further concluded that plaintiff, by "engaging in a dual social and sexual relationship with Ms. Michaels violated the standard of care with regard to the ethical standards in place for psychologists practicing in Connecticut in 1985 and 1986." The Board further concluded that such relation of the standard of care occurred despite the fact that the dual social and sexual relationships existed when Michael Michaels, Jr. was no longer in treatment with the plaintiff and was no longer a CT Page 6421 minor. These findings and conclusions are supported by substantial evidence in the record.
Moreover, the Board was able to reach this conclusion on its own because it was composed of a majority of experts (two professional members and one public member). As such, "the Board may rely on its own expertise in evaluating charges against [practitioners] and the requisite standard of care by which to judge such cases." Levinson v. Board ofChiropractic Examiners, 211 Conn. 508, 525 (1991). Section 478(8) provides: "The agency's expertise, technical competence and specialized knowledge may be used in the evaluation of the evidence." See also Leibv. Board of Examiners for Nursing, 177 Conn. 78, 89 (1979).
Thus, the Board's conclusion that the plaintiff violated the standards of conduct of his profession is supported by substantial evidence and by its own expertise in reaching that conclusion.
 III.
The third ground of the plaintiffs appeal is the claim that the Board erred in finding that the plaintiff continuing to practice psychotherapy presents a danger to the public. The plaintiff claims error in that the conclusion was not supported by expert opinion testimony or facts in the record, and plaintiff was denied the opportunity to testify on the subject.
It should be noted at the outset that there is no requirement that the Board make any finding in a disciplinary action as to whether or not a practitioner's current practice represents a danger to the public. Section 20-192 provides that the Board may impose a variety of sanctions if the practitioner has been found by the Board "to have acted negligently, incompetently or wrongfully in the conduct of his profession." This statute is in contrast to § 20-13c, which governs the actions of the Connecticut Medical Examining Board, and requires that Board to consider in each disciplinary case "whether the physician poses a threat in his practice of medicine to the health and safety of any person."
At the hearings plaintiff presented two psychologists who testified that the plaintiff did not at that time present a danger to the public. The Board was free to disbelieve those opinions. Jaffee v. Department ofHealth, 135 Conn. 339, 349 (1949); Levinson v. Board of ChiropracticExaminers, supra at 523.
The Board's finding as to plaintiffs danger to the public related to its imposition of sanctions, not to its determination of plaintiff CT Page 6422 violating the standards of professional conduct. In making that finding, it could rely on its own expertise without supporting expert evidence.
There is no validity to plaintiffs claim that the Board erred in refusing to allow him to testify on October 31, 1997 as to whether or not his continuing to practice represented a danger to the public. He had been permitted to testify in the five days of hearings preceding October 31, 1997. After the Board issued its first decision on October 11, 1996, plaintiff sought reconsideration. The Board granted plaintiffs motion and informed the parties it would be using its own expertise in rendering a new decision. The Board reopened the record for the limited purpose of allowing the plaintiff the "opportunity to present any additional expert evidence that he would have presented if he had known that the Board was utilizing its own expertise in this case." The plaintiff presented two expert witnesses who expressed opinions on the issue of plaintiffs continued practice endangering the public. Dr. Ebert had interviewed the plaintiff for two hours and testified at length about what the plaintiff had learned from the experience. Both he and the plaintiff did not believe that his continued practice represented a danger to the public. Dr. Wolff testified in a similar vein. Plaintiffs counsel then called the plaintiff to testify and stated that the plaintiffs testimony would be "basically consistent with what he told Dr. Ebert." The Board denied plaintiffs request to testify on the grounds that his testimony would be cumulative.
Pursuant to § 4-178, the Board is entitled to exclude "unduly repetitious evidence." This court will not disturb the Board's exercise of its discretion on that issue.
Moreover the Board made it clear that it was reopening the hearing solely for purposes of hearing additional expert evidence that would have been presented at the original hearings if the plaintiff had known that the Board would be utilizing its own expertise in the case. The issue of plaintiffs danger to the public goes to the appropriate sanctions to be imposed if the plaintiff violated the professional standard of conduct and was always an issue before the Board. Plaintiff had ample opportunity during the prior hearings to address that matter. The Board did not abuse its discretion in limiting the hearing on October 31, 1997 to expert testimony and denying plaintiff the opportunity to testify.
The evidence was overwhelming that the plaintiff had engaged in sexual relations with Ms. Michaels. He steadfastly denied that type of relationship and further stated that a psychologist is only forbidden from having such a relationship with a patient or former patient. The plaintiffs own expert testified that his conduct evidenced "a pattern of lack of judgment," even if he had only a business relationship with Ms. CT Page 6423 Michaels. That expert also testified that acknowledgment of behavior is a critical step in reshaping future behavior. Thus, this court finds substantial evidence in the record to support the Board's conclusion that plaintiff continuing to practice represents a danger to the public.Keiser v. Conservation Commission, 41 Conn. App. 39, 41 (1996).
 IV.
As a fourth ground for this appeal, plaintiff claims that the Board abused its discretion in the imposition of sanctions.
The Board ordered the plaintiff placed on indefinite probation. During his probation, plaintiff was prohibited from treatment to patients or clients in any setting except individual and group therapy to nursing home patients. After one year on probationary status, the plaintiff was permitted to come before the Board to request withdrawal or modification of the terms of probation. To convince the Board, the plaintiff may, but was not required, to undergo a psychological evaluation and if that evaluation determined that therapy would be beneficial, the plaintiff should engage in individual psychotherapy for at least one year of his probation. Finally, the Board imposed a $10,000 civil penalty, not to be paid if the plaintiff successfully completed his period of probation.
Section 19a-17 provides that a Board, upon a finding of good cause, may revoke the practitioner's license; suspend him; censure him; issue a letter of reprimand; place the practitioner on probationary status, limiting his practice during that period; require professional education; and assess a civil penalty of up to $10,000.
The general rule is that if the sanctions are within the limits prescribed by law "the matter lies within the exercise of the [agency's] discretion and cannot be successfully challenged unless the discretion has been abused." Gibson v. Connecticut Medical Examining Board,141 Conn. 218, 230 (1954). While in very rare instances the court has found that an agency's imposition of sanctions abused its discretion,Tucker v. Board of Education, 177, Conn. 572, 582 (1979), it regularly recognizes that sanctions are "an inherently fact bound inquiry. In an administrative appeal, the reviewing `court can do no more, on the factual questions presented than to examine the record to determine whether the ultimate findings are supported, as the statute requires, by substantial evidence.'" Pet v. Department of Health Services, 228 Conn. 651,678 (1994).
Here, the penalty imposed by the Board is within the range of penalties authorized by § 19a-17. The findings upon which the sanctions were imposed are fully supported by substantial evidence on the record. The CT Page 6424 probation imposed may be for no longer than one year if the plaintiff fulfills the condition of the psychological evaluation and, if warranted, undertakes a period of psychotherapy. Although the plaintiff has been a licensed psychologist since 1960 and has never had a complaint filed against him before, this court cannot conclude that the Board abused its discretion imposing the sanctions that it did.
 V.
The plaintiff claims that he was denied due process of law by the Board in that two of the three members who participated in the decision of this case did not personally observe the testimony of all the witnesses. There is no merit to this claim.
Section 4-179 states in pertinent part:
 (a) When in an agency proceeding, a majority of the members of the agency who are to render the final decision have not heard the matter or read the record, the decision, if adverse to a party, shall not be rendered until a proposed final decision is served upon the parties, and an opportunity is afforded to each person adversely affected to file exceptions and present briefs and oral argument to the members of the agency who are to render the final decision. (underlining added)
In the instant case each of the Board members who participated in the final decision read the record. Also, a proposed final decision was served upon the parties and opportunity afforded to the plaintiff to file exceptions and present briefs and oral argument to the members of the Board who decided the case. Section 4-179 was complied with.
This procedure has been found to safeguard basic due process rights. InPet v. Department of Health Services, supra at 673, the court said:
 "The express assumption of § 4-179 is that a Board may render a final decision even when no Board member has heard the evidence or read the record, provided the Board complies with the designated UAPA procedural safeguards. . . . In regard to administrative proceedings, we have held that `where hearings are required by statute a [Board] member need not be present in order to participate in decisions [i]f that member acquaints himself sufficiently with the issues raised and the evidence and arguments presented at the CT Page 6425 public hearing in order to exercise an informed judgment. Loh v. Town Planning and Zoning Commission, 165 Conn. 687, 724, 345 A.2d 563 (1974). The UAPA procedure generally requiring a public hearing in contested cases and § 4-175 in particular are patently sufficient to safeguard basic due process rights.
 VI.
Plaintiff finally contends that his constitutional right to due process of law and fundamental fairness was violated by the delay between the dates of the alleged wrongful conduct and of the hearing and the decision in this case.
The timing of the important events of this case are as follows: The plaintiff and Ms. Michaels engaged in an impermissible dual relationship in the period from October 1985 through March 1986. On or about January 10, 1991 Ms. Michaels filed a complaint with the Department of Public Health. By letter dated June 17, 1992 the Department informed the plaintiff that it was contemplating initiating formal license revocation proceedings before the defendant Board based upon allegations of Ms. Michaels' complaint. The Department offered to meet with the plaintiff to discuss the allegations and give him an opportunity to show compliance and discuss the possibility of settling the matter short of a hearing. On or about January 28, 1994, the Department filed a statement of charges against the plaintiff and sent a notice scheduling a hearing for May 6, 1994. The plaintiff requested a continuance and the hearings were ultimately rescheduled for September 23, 1994. Hearings were held on September 23, October 4, 1994, January 26, 1995 and February 15, 1996. During the hearings various continuances were requested by the plaintiff and granted by the Board. The Board issued a decision on October 11, 1996. The plaintiff filed a petition for reconsideration on or about October 29, 1996. The Board granted the petition for reconsideration on November 15, 1996. On June 30, 1997, the plaintiff requested the opportunity to present additional expert evidence to the Board and that evidence was presented on October 31, 1997. On March 12, 1998, the plaintiff moved to re-open the hearing and that motion was denied on March 23, 1998. On May 26, 1998, the Board issued a proposed decision. The plaintiff submitted exceptions to the proposed decision and a brief and requested oral argument. Oral argument was held on June 12, 1998 and the Board adopted the proposed decision as its final decision on June 12, 1998.
The defendant claims that plaintiff has waived his due process and fundamental fairness claim because it was raised for the first time after CT Page 6426 the hearings had been concluded. The general rule certainly is that: "A party to an administrative proceeding cannot be allowed to participate fully at hearings and then, on appeal, raise claims that are not asserted before the Board". Dragan v. Connecticut Medical Examining Board,223 Conn. 618, 632 (1992). As stated in Jutkowitz v. Department of HealthServices, 220 Conn. 86, 95 (1991), "We have held that the failure to raise a procedural claim or the failure to utilize a remedy available to cure a procedural defect can constitute a waiver of the right to object to the alleged defect."
However, Imperial Casualty and Indemnity Co. v. State, 246 Conn. 313,321 (1998), recognizes the rule that "In exceptional circumstances, even claims not properly raised below will be considered." Quoting from Berryv. Loiseau, 223 Conn. 786, 828-89 (1992), the court said "`[S]uch exceptional circumstances may occur where a new and unforseen constitutional right has arisen between the time of trial and appeal . . .'" That is. what occurred here. After the end of the hearings and during the pendency of this appeal, the Superior court rendered two decisions holding that long delays in administrative proceedings, resulting in suspension of doctors' licenses, violated the constitutional rights of due process and the common law right to fair administrative process. Baerv. Connecticut Board of Examiners and Podiatry, 21 Conn.L.Rptr. 165
(January 6, 1998, (McWeeny, J.) and Koff v. Connecticut Medical ExaminingBoard, 24 Conn.L.Rptr. 88 (February 9, 1999, (Weeny, J.).
Turning to the merits of plaintiff's claim, the court starts with the proposition that "a license to practice medicine is a recognized property right and may only be revoked under procedures that comport with constitutional due process of law." Pet v. Department of Health Services,207 Conn. 346, 353-54 (1998).[1]
As stated above, in Baer and Koff the Superior court found that delays in administrative proceedings violated due process and fundamental fairness. The court rested its decision in Koff on the holding that "in a license revocation proceeding, the failure to provide either a pre-suspension or prompt post-suspension hearing has been found to violate due process requirements." It cited for this holding Berry v.Barchi, 443 U.S. 55, 67, 99 S.Ct. 2642. 61 L.Ed.2d 365 (1979) andCleveland Board of Education v. Loudermil, 470 U.S. 532, 105 S.Ct. 1487,84 L.Ed.2d 494 (1985). These Supreme Court cases are not strictly on point. In Barry, the court did say that the plaintiff was entitled to "a prompt post-suspension hearing, one that would proceed and be concluded without appreciable delay." 61 L.Ed.2d at 376, and in Cleveland Board ofEducation the court said "At some point, a delay in the post-termination hearing would become a constitutional violation." 84 L.Ed.2d at 507. InBerry a horse trainer was temporarily suspended because the horse he CT Page 6427 trained was found drugged after a race. In Cleveland Board of Education, city employees were temporarily terminated. In both cases. a prompt post-suspension hearing was mandated because employees were first suspended or terminated. In the case before this court the plaintiff has not been placed on probation prior to a final determination.
The other basis upon which the Baer and Koff court rests its decisions is the doctrine of a speedy trial. The court, opined that the speedy trial doctrine is instructive in that it involves the court's balancing the impact of a delay on constitutional rights and the administration of justice. Assessing speedy trial claims, the following four factors are considered: (1) length of delay; (2) reason for delay; (3) defendant's assertion of his right; and (4) prejudice to the defendant. As the court said in State v. Nims, 180 Conn. 589, 591-92 (1980) "[N]one of these factors standing alone would demand a set disposition; rather, it is the total mix which determines whether the defendant's right was violated."
In Baer a podiatrist was found by the Connecticut Board of Examiners in Podiatry to have violated the acceptable standard of care in his surgical treatment of the patient and in his use of an inappropriate medication during her surgery. The court noted there was no explanation of the patient's waiting over five years from the last procedure to initiate a complaint; there was an extreme delay of over ten years between the surgery and the hearing date; the doctor did not cause the delay; the doctor asserted his objection to the timeliness of charges in his initial answer to the complaint; and, most importantly, there was evidence of prejudice to the doctor in that the department regulations authorized the doctor to dispose of his records three years after treatment, and the doctor, in fact, did that, so that his expert witness was unable to give an opinion because of the absence of x-rays.
In Koff, a medical doctor was charged with a single instance of malpractice, the delay between treatment and notice of investigation was 44 months; charges were not filed until six years later; the hearing occurred 6 1/2 years from the treatment; and the final decision was not issued until over 7 1/2 years had elapsed. The doctor, prior to the hearing, objected to the timeliness of the proceedings, delay was not the fault of the doctor, and he was prejudiced by the delay because a nurse who witnessed aspects of the treatment was not available to testify.
The Baer and Koff cases are distinguishable from the instant case on the following grounds: (1) There was an explanation for Ms. Michaels delaying complaining to the Department of Health from 1986 until 1991 because she was being treated by another psychiatrist with whom she had an improper sexual relationship, and she suffered post traumatic stress disorder; (2) the plaintiff himself contributed to the delays in the CT Page 6428 hearings by asking for numerous continuances; (3) prior to the hearings and during the hearings the plaintiff did not object to the timeliness of the proceedings; and (4) most significantly, the plaintiff has not shown any prejudice as a result of the delay. In contrast to the Baer and Koff
cases where explanation of medical treatment could not be provided because of the destruction of x-rays or the absence of a key witness, here the nub of the case was the improper dual social and sexual relationship between the plaintiff and Ms. Michaels over a number of months. The plaintiff claims that he could not document a so-called "business" relationship because of lack of records. But even if he could have proven a business relationship, there was substantial evidence in the record to support the Board's finding that there was also a sexual relationship. Moreover, the core of the Board's determination of plaintiffs unprofessional conduct is the duality of the relationship.
This court notes that to the extent that delays in an administrative proceeding implicate due process and fundamental fairness rights, the time periods can be broken down as follows: (1) The time between the alleged misconduct and the filing of charges. This is akin to a statute of limitations period. Since no statute of limitations applies to administrative proceedings, this period of time is not, in and of itself, determinative. (2) The time between the filing of the charges and the beginning of the hearing. This period implicates the speedy trial doctrine. Since the right to a speedy trial derives from specific constitutional (Conn. Const. Article I, Section 8) and statutory provisions (C.G.S. § 52-82m) and involves issues of pretrial incarceration and the unique anxiety induced by pending criminal charges,Barker v. Wingo, 407 U.S. 514, 532 (1972), strictly speaking it is not applicable. (3) The time between the hearing and the final agency decision. This period is akin to the requirement at § 51-183b that a judge must decide a case within one hundred and twenty days from the completion of the trial. This requirement has no relevance to administrative proceeding and should be ignored.
The test that should properly be applied in determining whether or not delays violate due process (Pet v. Department of Health Services,228 Conn. 651, 683 (1994), or "fundamental fairness" (Grimes v.Conservation Commission, 243 Conn. 266, 273 (1997) is whether or not the plaintiff has been prejudiced. The pertinent time should be from the date of the alleged misconduct to the date of the filing of the charges because the plaintiff would then be alerted to prepare his defense and assemble his evidence. Under special circumstances, when evidence could be lost, it may even be from the date of the alleged misconduct to the date of the start of the hearing.
In this case, the plaintiffs relationship with Ms. Michaels ended in CT Page 6429 March 1986, charges were filed on January 28, 1994 and the hearings started on September 23, 1994. The period of eight years is a long time. But as this court has found, plaintiff was not prejudiced by that delay. He had not been preliminarily suspended so he suffered no impairment of his rights to practice during that period. The nature of the charges against him, based upon his six months improper relationship with Ms. Michaels, were such that the delay did not inhibit his opportunity to prepare a defense.
The court concludes that plaintiffs right to due process and fundamental fairness has not been violated.
The appeal is dismissed.
 Robert Satter Judge Trial Referee