DONALD F. GIBSON *v.* CONNECTICUT MEDICAL EXAMINING BOARD ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

Argued March 2—decided April 20, 1954

*David Goldstein* and *Frank Logue,* with whom, on the brief, was *Bernard S. Peck,* for the appellant (plaintiff).

*Louis Weinstein,* assistant attorney general, with whom, on the brief, was *William L. Beers,* attorney general, for the appellees (defendants).

BALDWIN, J. The plaintiff has appealed from a judgment of the Superior Court dismissing his appeal from the action of the defendant Connecticut medical examining board in recommending that his license to practice medicine be revoked, and of the defendant the state department of health in revoking it.

The state department of health, hereinafter referred to as the department, acting pursuant to § 4358 of the General Statutes, filed with the medical examining board, hereinafter referred to as the board, a complaint which contained six charges of improper professional conduct by the plaintiff in the practice of his profession as a physician and surgeon. After a hearing, held pursuant to § 1658c of the 1953 Cumulative Supplement, at which the plaintiff appeared personally and with counsel, the board was unanimous in finding him guilty of two of the charges and part of a third, as follows: Unprofessional and incompetent conduct in failing to make

necessary tests to corroborate the diagnosis of the ailment of his patient, Miss Elizabeth Ayres; unprofessional conduct in that he aided, abetted and advised Dr. Frank T. Genovese to sign a death certificate certifying to the death of Miss Elizabeth Ayres before she actually died; and unprofessional conduct, in view of the expressed desire of Miss Elizabeth Ayres to be buried, in making arrangements prior to her death for the transmission of her body to Yale University for anatomical purposes or in actually delivering her body to a representative of Yale Medical School for such purposes after her death. The board recommended to the department that the plaintiff's license to practice medicine and surgery be revoked, and the department accordingly revoked it. The plaintiff alleges that the court erred in refusing to reverse the action of the defendants. He claims that they acted illegally, arbitrarily and in abuse of their discretion—the department, in filing charges against him and in imposing an unwarranted penalty, and the board, in finding him guilty of any of the charges and in recommending the penalty imposed. He claims further that the statute under which the defendant department purported to act is unconstitutional.

Before discussing the facts relevant to the charges found proven, it is well that we lay down some principles of law for guidance. On this appeal it is not the function of the trial court, nor of this court, to retry the cause. The defendant board is an administrative agency, although it acts in a quasi-judicial capacity. To render a decision, it must weigh evidence and reach conclusions. *Adam* v. *Connecticut Medical Examining Board,* 137 Conn. 535, 537, 79 A.2d 350. The credibility of witnesses and the determination of issues of fact are matters within its

province. *Jaffe* v. *State Department of Health,* 135 Conn. 339, 343, 64 A.2d 330. On the other hand, upon appeal, "the function of the court is to determine whether or not [the board] acted illegally; and while we have frequently added the words 'arbitrarily or in abuse of its discretion,' this manner of expression merely points to certain aspects in which the illegality may subsist because the conduct of the board would be in violation of the powers granted to and duties imposed upon it." Id., 353; *Modeste* v. *Public Utilities Commission,* 97 Conn. 453, 458, 117 A. 494; *DeFlumeri* v. *Sunderland,* 109 Conn. 583, 585, 145 A. 48; see *Beaverdale Memorial Park, Inc.* v. *Danaher,* 127 Conn. 175, 182, 15 A.2d 17; *Lanyon* v. *Administrator,* 139 Conn. 20, 28, 89 A.2d 558. Such an appeal usually requires an examination of the record of the hearing before the board to determine whether the conclusions reached are legally supported by the evidence. *Grady* v. *Katz,* 124 Conn. 525, 530, 1 A.2d 137; *Hoffman* v. *Kelly,* 138 Conn. 614, 619, 88 A.2d 382; *Skarzynski* v. *Liquor Control Commission,* 122 Conn. 521, 525, 191 A. 98; see *Shuman* v. *Brainard,* 130 Conn. 564, 568, 36 A.2d 113; *Cohen* v. *Board of Appeals on Zoning,* 139 Conn. 450, 452, 94 A.2d 793. If they are, the court cannot change them.

The grounds for suspending, revoking or annulling a license to practice medicine and surgery are set forth in § 4358 of the General Statutes. The complaint filed against the plaintiff charged him with "unprofessional conduct" and "incompetent conduct." These words are comprehended within the terms "immoral, fraudulent, dishonorable or unprofessional conduct" and "illegal, incompetent or habitually negligent conduct," used in the statute. Conduct within one or more of these descriptions would warrant action by the board. *Adam* v. *Con-*

*necticut Medical Examining Board,* 137 Conn. 535, 538, 79 A.2d 350. We have said that "immoral, dishonorable or unprofessional" conduct includes, within the fair purport of these terms, only conduct "which either shows that the person guilty of it is intellectually or morally incompetent to practice the profession or has committed an act or acts of a nature likely to jeopardize the interest of the public." *Sage-Allen Co.* v. *Wheeler,* 119 Conn. 667, 679, 179 A. 195; *Lieberman* v. *Board of Examiners,* 130 Conn. 344, 346, 34 A.2d 213; 41 Am. Jur. 175, § 49. Upon the question of professional competency, it must be borne in mind that the board is composed of five practicing physicians appointed by the governor upon recommendation of the Connecticut Medical Society. General Statutes § 4365. It is to be presumed that these men are qualified to pass upon questions of professional conduct and competence. *Jaffe* v. *State Department of Health,* 135 Conn. 339, 349, 64 A.2d 330. The plaintiff and the defendants could have offered expert testimony. Id., 350. Neither did. In any event, the board was qualified to determine whether the plaintiff's conduct complied with professional standards and whether he was competent, within the terms of the charges upon which he was presented. Id., 349.

The evidence before the board pertinent to the charges of which the plaintiff was found guilty was in substance as follows: He is a graduate of Yale College and Yale Medical School. He was duly admitted to practice medicine and surgery in this state in 1929. Since then, except for three and a half years while he was serving as a medical officer in the navy, he had practiced his profession in Danbury; 60 to 70 per cent of his practice was in surgery. In 1946, the plaintiff, who was separated from his

wife, moved into the house in Danbury occupied by Miss Elizabeth Ayres and a Dr. Griffin, who died in 1948. The plaintiff lived in the house until Miss Ayres died on July 26, 1950, at the age of seventy-four years. Miss Ayres was fond of the plaintiff and treated him as a son. She owned real estate of substantial value. In 1947 she made a will in which she left her entire estate to the plaintiff or, if he predeceased her, to his daughter. On September 23, 1949, after many discussions with the plaintiff, Miss Ayres transferred all of her real estate to a third party, who immediately retransferred it to Miss Ayres and the plaintiff and to the survivor of them.

On May 19, 1950, the plaintiff secured a divorce from his wife. Miss Ayres testified as a witness. Very shortly thereafter, she developed a severe attack of diarrhea and persistent vomiting, together with an infection of her mouth and gums. The plaintiff treated her and administered various medicines. The infection in her mouth and gums cleared up. When she did not otherwise fully respond to treatment, the plaintiff, on June 18, 1950, called in Dr. Frank T. Genovese, a practicing physician in Danbury. Dr. Genovese at no time prescribed any medicine for Miss Ayres. He continued to consult with the plaintiff regarding her illness until she died. The only nursing care which she received during this time was performed by the plaintiff's mother, a woman in her late seventies, and by Vincent Golembesky, who subsequently became a brother-in-law of the plaintiff and who was employed by him for maintenance and clerical work. The plaintiff's mother had had no nursing experience whatsoever. Golembesky had been given some first-aid training while he was serving in the air corps. Although there was a visiting nurse association in Danbury, its facilities

were not used. During most of her last illness, Miss Ayres was bedridden and unable to attend to her personal needs.

On June 16, 1950, Miss Ayres changed the will which she had executed in 1947 in one respect, and that was to eliminate the Danbury National Bank as coexecutor with the plaintiff. After Miss Ayres's death, the plaintiff acquired full title to the jointly owned real estate by virtue of the survivorship deed and to all of her personal estate, which passed by her will. The former was appraised for inheritance tax purposes at $72,750, and the latter was inventoried at $1578.75.

Upon the charge that the plaintiff was guilty of unprofessional or incompetent conduct in failing to make necessary tests to corroborate the diagnosis of the ailments of his patient, Miss Ayres, he claims that Dr. Genovese, whom he had called into the case, made the diagnosis. He concedes in his brief, however, that the evidence was in conflict as to whose patient Miss Ayres really was, but he claims that there is no question who made the diagnosis of her condition and that he is not responsible for that diagnosis. Dr. Genovese was called into the case by the plaintiff on June 18, 1950. He found Miss Ayres in bed. She had a raw throat and an irritated rectum. Her pulse was slow, even, not strong, and her blood pressure was 100 over 60. Her heart sounds were weak. There was a mass in her abdomen. She was weak. Dr. Genovese, after he had examined her, told the plaintiff that he did not know what was wrong but that from the clinical signs and symptoms he suspected myocarditis, a possible nephritis and a possible malignant bowel. He suggested that she continue the medication prescribed by the plaintiff. He told the plaintiff that efforts should be made to confirm the

diagnosis by x-ray and other tests. The plaintiff concurred in the tentative diagnosis. Dr. Genovese considered himself a consultant and not the attending physician. He made subsequent visits to see Miss Ayres and tried to send her to the hospital, to secure nurses for her and to obtain specimens of her urine and stool. He attempted to withdraw from the case because he felt that his efforts were futile. For one period of time, Miss Ayres was alone in the house and Dr. Genovese had difficulty in gaining admission. He complained to the plaintiff that the plaintiff assumed all the responsibility and yet he, Genovese, was attending the patient. His recommendation to have the diagnosis confirmed was repeated, without result. The board would have been justified in concluding upon all the evidence that, apart from one urinalysis made by the Danbury Hospital and a half-hearted attempt to administer barium to Miss Ayres only one week before her death, so that an x-ray could be taken, no tests of any kind were made to confirm the tentative diagnosis. Upon the record, the board, in sound reason, could have reached the conclusion that the plaintiff was responsible for the care and treatment of Miss Ayres, that the care and treatment administered by him fell far short of what professional standards required, that it indicated an incompetence to practice medicine, that the plaintiff's attitude throughout showed a callous indifference to Miss Ayres's comfort or recovery, and that his conduct in these particulars constituted unprofessional and incompetent conduct.

The board found the plaintiff guilty of unprofessional conduct in that he aided, abetted and advised Dr. Genovese to sign a death certificate certifying to the death of Miss Ayres before it occurred. The plaintiff contends that the board could not legally hold him

responsible for the act of another physician and that the charge is not one within the terms of § 4358 of the General Statutes. The statute provides that "unprofessional conduct" shall be a ground for action by the board. Whether the act of aiding, abetting and advising Dr. Genovese to sign the blank death certificate before the patient was dead, with the understanding that the plaintiff would complete and use it for a purpose known only to him, constitutes unprofessional conduct is a question which the board was competent to decide. Dr. Genovese did not know that Miss Ayres's body was to be sent immediately upon her death to the Yale Medical School. He had been told by the plaintiff that Miss Ayres had expressed a desire to be cremated. The testimony before the board was that on the morning of the day Miss Ayres died, the plaintiff called Dr. Genovese and told him that "Lizzie was slipping." Dr. Genovese replied that he was going to New York and could not see her that day. Thereupon the plaintiff asked him if he would sign a blank death certificate. Dr. Genovese demurred unless he could first see the patient. By arrangement with the plaintiff, a blank certificate was left at Miss Ayres's house. Dr. Genovese signed it after filling it in, in part. The plaintiff completed it after Miss Ayres died.

The statute prescribes that a certificate shall be made within twenty-four hours after the death of any person and shall state the cause of death. Cum. Sup. 1953, § 185c. A penalty is provided for failure to comply with the statute or for knowingly signing a false certificate. It was necessary that a death certificate be recorded with the registrar of vital statistics before Miss Ayres's body could be removed from Danbury to the Yale Medical School. Cum. Sup. 1953, §§ 185c, 187c. The speed with which

this removal was accomplished explains why the plaintiff desired to obtain a death certificate at the earliest possible time after Miss Ayres's demise, and accounts for the plaintiff's request of, and suggestion to, Dr. Genovese that he prepare the certificate, so far as he could, before her death, leaving it for the plaintiff to complete thereafter. Since this conduct was of a nature likely to jeopardize the interests of the public, the conclusion of the board that it was unprofessional was not unreasonable or arbitrary under the circumstances.

The plaintiff concedes that he made arrangements with the Yale Medical School authorities to deliver Miss Ayres's dead body to the school for anatomical purposes. In passing, it is only fair to state that the school authorities cannot be held responsible for the plaintiff's conduct. Dead bodies are frequently delivered for such purposes, and there was a well-defined procedure for so doing. Miss Ayres's last illness began on May 19, 1950. In the latter part of that month, the plaintiff conferred with the medical school authorities concerning the use of her dead body for anatomical purposes. He testified that it was Miss Ayres's wish that her body be used for these purposes. On the other hand, there was evidence that she had expressed to old friends the desire to be buried beside her father and mother in Danbury. Furthermore, she revealed her intent by the provision in her will ordering the payment of the expenses of her burial. The plaintiff argues that unless the evidence establishes as a fact that it was Miss Ayres's last desire to be buried, he cannot be found guilty of unprofessional conduct. He points out that testimony of any wish she may have expressed long before her final illness does not necessarily controvert his testimony to the effect that she had

expressed a wish to have her body used for anatomical purposes. It was within the province of the board not to accept the plaintiff's testimony. Furthermore, Dr. Genovese testified that the plaintiff had never told him that he intended to send Miss Ayres's body to the medical school. He further stated that during the illness of Miss Ayres he had suggested the advisability of performing an autopsy in the event of her death, to confirm the tentative diagnosis of the cause of her illness, and that the plaintiff had told him that Miss Ayres was opposed to any autopsy and that she wished to be cremated. A conclusion that the body of Miss Ayres was delivered for anatomical purposes against her expressed wishes was warranted upon the evidence.

The plaintiff contends further that the disposition of the body was not unprofessional conduct because it could only occur after her death. The board was justified in refusing to draw so fine a line of distinction. Even though the plaintiff was the sole executor of Miss Ayres's estate, he had no right as executor to dispose of her dead body as he might wish. 15 Am. Jur. 836, § 11; 25 C.J.S. 1019, § 3; *Enos* v. *Snyder*, 131 Cal. 68, 71, 63 P. 170. His relationship to her was primarily that of a physician. For him, in that capacity, to make arrangements early in what proved to be her last illness to deliver her body, when dead, to a medical school, without a finding that she desired that this be done, to secure a death certificate at the earliest possible time under the circumstances and ship her body off to the school within so short a time after her death, was conduct which the board could well have found contrary to the ethics of the profession. Upon the facts disclosed by the testimony before the board upon this phase of the case, we hold that the board did not act

illegally or abuse its discretion in labeling the plaintiff's conduct "unprofessional."

The plaintiff claims that the penalty was too severe. It was one within the power of the board, in the exercise of a sound discretion, to recommend. The situation is analogous to the imposition of a penalty by the court in a criminal case. If the penalty meted out is within the limits prescribed by law, the matter lies within the exercise of the court's discretion and cannot be successfully challenged unless the discretion has been abused. *State* v. *Chuchelow*, 128 Conn. 323, 324, 22 A.2d 780; *State* v. *Miglin*, 101 Conn. 8, 12, 125 A. 250; *State* v. *Pambianchi*, 139 Conn. 543, 548, 95 A.2d 695. It is to be noted that the board's recommendation to the department was not based upon any single one of the charges found proven, but upon the cumulative effect of a finding of guilty upon all three.

The plaintiff contends finally that the revocation of his license by the department was illegal and unconstitutional because he was denied due process of law. The department, he alleges, took no evidence, thus depriving him of a hearing, and acted solely upon the recommendation of the board. Section 4358 of the General Statutes provides for a hearing before the board. The department acts only upon the board's recommendation. § 4359. Its act is purely ministerial. *Jaffe* v. *State Department of Health*, 135 Conn. 339, 353, 64 A.2d 330; *State ex rel. Taylor* v. *Osborn*, 136 Conn. 83, 86, 68 A.2d 363; see *State ex rel. Lacerenza* v. *Osborn*, 133 Conn. 530, 533, 52 A.2d 747. There is no merit to this contention.

There is no error.

In this opinion the other judges concurred.