EDMUND W. DWYER *v.* CONNECTICUT STATE DEPARTMENT OF HEALTH

BALDWIN, KING, MURPHY, MELLITZ and SHEA, Js.

Argued April 15—decided May 5, 1959

*Jules S. Tarlow,* with whom was *M. Peter Barry,* for the appellant (plaintiff).

*Louis Weinstein,* assistant attorney general, with whom, on the brief, was *Albert L. Coles,* attorney general, for the appellee (defendant).

BALDWIN, J. On September 19, 1957, the plaintiff, who was licensed to practice hypertrichology (defined as the removal of superfluous hair by electrical or other approved methods) was charged by the state department of health with "immoral, dishonorable or unprofessional conduct." The department referred the charges to the board of examiners of hypertrichologists for a hearing and recommendations. Rev. 1958, §§ 20-267, 20-271, 20-272. The board held a hearing and recommended that the plaintiff's license be suspended for six months. The department suspended the license as recommended. The plaintiff appealed to the Superior Court, which rendered judgment dismissing the appeal. He has appealed from that judgment.

The department of health is in fact only a nominal defendant, because under the statute it acts upon the recommendation of the board. Rev. 1958, §§ 20-271, 20-272. The court considered the plaintiff's appeal upon the record of the board of examiners, including a complete transcript of the testi-

mony taken by it, and the testimony of expert witnesses presented in court. *Conley* v. *Board of Education,* 143 Conn. 488, 492, 123 A.2d 747; *Gibson* v. *Connecticut Medical Examining Board,* 141 Conn. 218, 221, 104 A.2d 890; *Jaffe* v. *State Department of Health,* 135 Conn. 339, 355, 64 A.2d 330. Essentially, the issue was whether the board had acted illegally or abused its discretion.

The court could have found that there was competent evidence before the board of the following facts: Two patients consulted the plaintiff, one for the removal of excess hair from her chin and the other for the removal of excess hair from her upper lip. The plaintiff requested the first to partially disrobe and took photographs of her breasts and thighs. After asking the second to partially disrobe, he took photographs of her breasts, stomach and navel. He showed to both patients pictures of the exposed portions of bodies of other women who presumably had been treated for superfluous hair. He claimed that his action was purely professional and done for the purpose of disclosing the tendency of the patient to have superfluous hair and to demonstrate how effectively it could be removed. He made no improper advances. Neither patient gave her consent to the taking of the photographs, and one of them did not know that any photographs were to be taken until after it was done. The plaintiff admitted that he had taken about 200 photographs of women patients which he viewed from time to time for professional reasons. The board found unanimously that "[t]here was no necessity or occasion for [the plaintiff] to take the photographs in question or to exhibit the photographs of other women to [the two] patients" and that "[t]he treatment involved in removing the superfluous hair from the chin in one

case and the upper lip in the other did not require the taking of photographs of other portions of the body." It was within the province of the board to hear and weigh evidence and to arrive at conclusions of fact. *Adam* v. *Connecticut Medical Examining Board,* 137 Conn. 535, 537, 79 A.2d 350; *Jaffe* v. *State Department of Health,* supra, 343.

Among other reasons, the statute gives to the board the power to recommend revocation or suspension of licenses for "immoral, . . . dishonorable or unprofessional conduct." Rev. 1958, § 20-271. Whether the conduct of the plaintiff, on the facts before the board, was at least unprofessional was a matter to be decided by the board, composed as it was of two dermatologists, who were licensed physicians and diplomates of the American Board of Dermatology, and three licensed hypertrichologists. That the board members were professionally competent must be presumed, the contrary not having been shown, because they were duly appointed under a statute which prescribes their qualifications. Rev. 1958, § 20-268. They could properly determine whether the plaintiff had committed acts which were of a nature likely to jeopardize the interest of the public and therefore constituted unprofessional conduct. *Gibson* v. *Connecticut Medical Examining Board,* 141 Conn. 218, 223, 104 A.2d 890; *Lieberman* v. *Board of Examiners in Optometry,* 130 Conn. 344, 346, 34 A.2d 213; *Sage-Allen Co.* v. *Wheeler,* 119 Conn. 667, 679, 179 A. 195.

The plaintiff claims that the court erred in admitting the expert testimony of two members of the board who had participated in the hearing. It was the plaintiff's right to submit expert testimony in support of his claims and it was the right of the board to offer expert testimony to sustain its con-

clusions. *Jaffe* v. *State Department of Health,* supra, 355. In choosing to offer expert testimony on its own behalf, the board might have been better advised if it had secured witnesses other than board members. We cannot say, however, that the receipt of this testimony constituted harmful error. The members of the board were qualified experts. The objection to their testimony goes to its weight rather than to its admissibility. While the plaintiff's experts testified that the taking of the photographs would be proper under some circumstances, they also testified that no photographs should be taken without the patient's express consent. Such consent was absent in this case.

The trial court did not err in concluding that the defendant, acting on the recommendation of the board of examiners of hypertrichologists, properly suspended the plaintiff's license.

There is no error.

In this opinion the other judges concurred.