[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Charles Franklin appeals the decision of the defendant gaming policy board revoking the plaintiff's license as a mutuel clerk. The board acted pursuant to General Statutes CT Page 1091 § 12-574(m) on the basis that the plaintiff violated Regs. Conn. State Agencies § 12-574-C14a(1) by wagering at the mutuel window at which he was then working. The plaintiff appeals pursuant to General Statutes § 4-183. The court finds the issues in favor of the defendant board.
The facts essential to the court's decision are not in dispute. At all relevant times, the plaintiff was employed as a mutuel clerk at the Plainfield Greyhound Park. In October 1992, the division of special revenue of the department of revenue services accused the plaintiff of wagering while on duty in violation of the regulation cited above. The plaintiff was summoned to attend a "Compliance Meeting," which was conducted by the division supervisor, Paul Reiman, on October 16, 1992.
The compliance meeting was held and conducted in accordance with General Statutes § 4-182 and Regs., Conn. State Agencies § 12-562-39a. These authorities provide generally that no license revocation is valid unless the licensee is first given an opportunity to show that he has in fact complied with all requirements for the retention of the license. Section 12-562-39a(c) provides that "Compliance conferences shall be recorded but need not be transcribed and the rules of evidence are not applicable."
In the present case, the plaintiff's compliance conference with the division supervisor was not recorded. The plaintiff claims, however, that it was totally inadequate. He says that the supervisor told him that a videotape of the plaintiff at his work station along with a printout of the plaintiff's pari-mutuel computer terminal entries showed that on August 22, 1992 the plaintiff was wagering for himself while on duty. The plaintiff asked to see this evidence but was told that it was not then available. The supervisor told him in essence that he believed the plaintiff was guilty as charged and that the next step would be a formal hearing. On March 1, 1993, the division, acting for the board, convened a hearing to determine whether the charges against the plaintiff were true and, if so, to recommend the appropriate penalty. Prior to the hearing, the plaintiff was given an opportunity to view the videotape and the computer log. He did not have legal counsel at the hearing but rather chose to be represented by a union representative. He also presented as a witness in his behalf a friend who had placed bets at the plaintiff's window on the day in question. The division introduced in evidence the video tape and the computer log. The CT Page 1092 principal witness for the division was Judith Pronicki, an employee of the division specializing in enforcement of gambling regulations. The plaintiff testified in his own behalf, and, along with his union representative, cross-examined Pronicki.
Following the hearing, the hearing officer rendered a proposed decision consisting of an exhaustive review of the evidence adduced at the hearing, findings of fact and the recommendation that the plaintiff's license be revoked. The hearing of officer's decision was based on his determination that the evidence and Pronicki's testimony established that the plaintiff had engaged in wagering for his own account while on duty in violation of the regulations. On January 18, 1994, the defendant board rendered its final decision adopting the findings and recommendation of the hearing officer and revoked the plaintiff's license. It is that final decision that the plaintiff appeals in this case.
The plaintiff advances two arguments as the bases of his appeal: (1) that the division and board violated the statute and regulation providing for a compliance conference; and (2) that the penalty imposed by the board, permanent license revocation, was overly harsh.
With respect to the conduct of the compliance conference, based on the sparse evidence available, it seems clear that the division failed to comply with its regulations at least insofar as it neglected to record the conference. The court also agrees with the plaintiff that the conference would have been more meaningful if the supervisor had showed the plaintiff the evidence against him so that he could respond to it specifically. The court concludes, nevertheless, that the defects in that procedure do not justify reversing the board's decision.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes 4-183(j) provides, in part, that "(t)he court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have beenprejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (3) made upon unlawful procedure [or] . . . (4) affected by other error of law...." (Emphasis added.) In order for a procedural deficiency to be the basis for reversing an agency decision, the person affected must show that he "suffer(ed) material prejudice as a result of (it)." CT Page 1093Jutkowitz v. Department of Health Services, 220 Conn. 86, 94
(1991),
In the present case, the plaintiff can demonstrate no material prejudice as result of the division's failure to comply with the spirit and letter of the regulations governing compliance conferences. This is because the division subsequently conducted a full evidentiary hearing at which the plaintiff was afforded all of the rights and privileges that he could have had under the most liberal reading of the statutes and regulations pertaining to "compliance conferences." Specifically, the plaintiff was given the opportunity to inspect the evidence against him, including the videotape and computer log, prior to the hearing; he was given the opportunity to testify and present evidence in his own behalf; and he was given the opportunity to cross-examine the witnesses against him. The hearing was conducted on the record and has been fully transcribed. After the hearing officer rendered the proposed decision, the plaintiff had the opportunity to file written arguments in opposition before the board took any action on his license.
As those undisputed facts indicate, the plaintiff was afforded all of the rights guaranteed by our Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., and those provisions exceed "the minimal procedural safeguards mandated by the due process clause." Pet v. Departmentof Health Services, 207 Conn. 346, 356-357 (1988). In effect, the hearing completely served the function of the more informal compliance conference, so that the fact that the conference may have been only perfunctory was of little significance.
With respect to the plaintiff's argument concerning the severity of the penalty imposed by the board, the court notes that General Statutes § 12-574(m) specifically authorizes the board to revoke a mutuel license for cause after a hearing. Unquestionably, the violation of the regulation prohibiting wagering while on duty provided cause for the imposition of a penalty. The board's action in this case was, therefore, within the discretion accorded it by law. This court may not disturb the board's decision in that regard unless there is some showing of an abuse of discretion. Gibson v. Medical Examining Board,141 Conn. 218, 230 (1954). The plaintiff has not pointed to any such abuse of discretion, either in his brief or in oral argument to the court. CT Page 1094
The appeal is dismissed.
MALONEY, J.