[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
The plaintiff, Marlee Swales, appeals a decision of the defendant, Department of Public Health on March 1, 1999, assessing against her a civil penalty of $3,500 for operating a child care facility without a license during the time period of January 10, 1998 through March 4, 1998.
The plaintiff asserts two grounds for this appeal: (1) The doctrine of CT Page 15945 equitable estoppel should be applied to prevent the Department of Public Health from assessing the penalty; (2) The imposition of the civil penalty against the plaintiff is arbitrary and illegal. Neither of these grounds has merit and the appeal is dismissed.
The facts are as follows. Sometime prior to October 31, 1997, Sandra Brown was licensed by the Department of Health, (hereinafter "Department") to operate The Children's Early Learning Center, a child care facility located at 72 Shaker Road, Enfield, Connecticut. On October 31, 1997, the plaintiff entered into an agreement with Ms. Brown to purchase the center for the purchase price of $60,000. At the time the contract was entered into, the plaintiff paid Ms. Brown $30,000 and agreed to pay her the balance of $30,000 at the closing which was designated by the agreement to be January 9, 1998. Commencing on November 1, 1997, plaintiff assumed control over the center. On November 25, 1997, the Department conducted a site inspection. Plaintiff was present at the facility and identified as the "director". The inspection report advised plaintiff that she should apply for a license by December 5, 1997. The plaintiff filed an application for a license with the Department on December 9, 1997. On or about December 18, 1997, Linda Bolat, a supervisor at the Department, spoke with the plaintiff by telephone and informed the plaintiff that her December 9, 1997 application was incomplete and she needed to submit a new application as soon as possible but no later than January 5, 1998. Ms. Bolat also advised plaintiff that it was unlawful to operate a facility without a license and that a civil penalty may be imposed for doing so. On January 9, 1998, plaintiff consummated the purchase of the center, pursuant to her agreement with Ms. Brown, and paid Ms. Brown the additional $30,000. On January 20, 1998, plaintiff submitted another application consisting of whiting out and changing the contents of the original application but continuing to use the affidavit plaintiff had signed and dated on November 21, 1997. Between January 10, 1998 and March 4, 1998, the Department attempted to work with plaintiff to bring her into compliance with the licensure requirements and at the same time Ms. Bolat and Ms. Freidenfelt, a Department inspector, reminded plaintiff and her agent that it was unlawful to operate a child care facility without a license. On February 26, 1998, Ms. Freidenfelt inspected the center and determined that it was not yet in compliance with the licensure requirements. On March 4, 1998, the Department directed plaintiff to shut down her center at once and the plaintiff complied by closing the center. On March 18, 1998, the Department notified the plaintiff it intended to assess a civil penalty of $3,500 for the unlawful operation of her child care facility. The plaintiff requested a formal hearing. Administrative hearings were held on July 24 and September 25, 1998. The parties were given the opportunity to present evidence, cross examine witnesses, and provide argument on all issues. A proposed decision was issued on January 12, CT Page 15946 1999 and included the proposed findings of fact, conclusions of law and the order assessing the civil penalty of $3,500 against the plaintiff. After hearing the parties in oral argument and considering their briefs filed in opposition to the proposed decision, the Department on March 1, 1999 adopted the proposed decision as its final decision in this matter.
 I.
As the first ground for its appeal the plaintiff asserts that the Department should be prevented from assessing a civil penalty against the plaintiff under the doctrine of equitable estoppel. The doctrine requires proof of two essential elements: (1) "The party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief and (2) The other party must change its position in reliance on those facts thereby incurring some injury." Kimberly-Clark Corporation v. Dubno,204 Conn. 137, 148 (1987). Furthermore, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency. Id. at 148. "[I]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." (Citations omitted.) Reinke v. GreenwichHospital Association, 175 Conn. 24, 28-29 (1978).
The plaintiff asserts that the Department induced her to believe that she could operate the center without a license because it was the practice of the Department to pen-nit purchasers of existing centers to continue to operate them while the application for license was pending. Furthermore, plaintiff asserts that while the plaintiff worked with representatives of the Department to complete her application during that period, the representatives never told plaintiff she was operating illegally and might incur a civil penalty. However, the findings of the hearing officer are to the contrary. He found Ms. Bolat advised the plaintiff that "it is unlawful to operate a facility without a license and a civil penalty may be imposed for doing so." He further found that during the period the Department was attempting to get plaintiff to complete her license application. Ms. Bolat and Ms. Freidenfelt repeatedly reminded plaintiff and her agent, Suzanne Sheriden, that it was unlawful to operate a child care facility without a license. The hearing officer also found, "At no time did a Department representative tell the respondent that she was authorized to operate the facility without a license; and no time did a Department representative tell respondent she would not be assessed a civil penalty for operating CT Page 15947 without a license; and, until March 4, 1998, no Department representative told respondent to stop operating her facility." The hearing officer further found: "Respondent's testimony that no one told her she was operating the facility unlawfully is not credible." All of these findings find support in the transcript.
The plaintiff claims she relied upon the practice of the Department by completing the purchase of the center on January 8, 1998 and paying to the seller the balance of the purchase price of $30,000.
The record does not support the plaintiff. She entered into the agreement to purchase the center on October 31, 1997 when she paid one-half the purchase price and began operating the center on November 1, 1997. Ms. Brown told the plaintiff that she was concerned that plaintiff was running the facility without a license. The plaintiff told Ms. Brown not to "raise any red flags" and "what the state doesn't know won't hurt them." She did not file a license application with the Department until December 9, 1997, two weeks after the Department did a site visit to the center and discovered plaintiff was running the center without a license. However, the plaintiff was informed on December 18, 1997, that her application was incomplete and she should re-submit the application not later than January 5, 1998 so she could be licensed before she took legal title to the center. However, plaintiff went ahead with the closing on January 9, 1998, and did not re-submit her application until January 20, 1998. This clearly indicates that the plaintiff planned to go forward with the January 9, 1998 closing and was not concerned with whether or not she had a day care center license or license application pending.
A further element to be established in order to apply the doctrine of equitable estoppel to a public agency is that purported misrepresentations were made by an agent of the Department having authority to make them. Even assuming that Ms. Bolat and Ms. Freidenfeld assured the plaintiff she could operate the center while an application was pending and without a civil penalty being imposed, there is sufficient evidence to support the hearing officer's conclusion that these Department employees did not have the authority to make such representations. The Department notice to the plaintiff to cease her day care operation dated March 5, 1998 came from Mr. Richard Edmonds, Director of the division of community based licensing, not from Ms. Bolat or Ms. Freidenfeld. It was reasonable for the hearing officer to conclude that Ms. Bolat and Ms. Freidenfeld did not have the authority to permit the plaintiff to operate without a license or to represent whether or not a civil penalty would be imposed.
The hearing officer's role was to assess the credibility of the CT Page 15948 witnesses appearing before the agency and to weigh the evidential value of their testimony. Laurence v. Koslowski, 171 Conn. 705, 708 (1976). Section 4-183(j) clearly provides "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Where substantial evidence supports the hearing officer's decision, it must be sustained. Huck v. Inland Wetlands andWatercourses Agency of the Town of Greenwich, 203 Conn. 525, 539-40
(1987).
Thus, this court finds there is substantial evidence in the record to support the hearing officer's determination that the plaintiff failed to establish the three elements of equitable estoppel against a public agency, namely, (1) a representation of an agent or an act of the Department that the plaintiff could operate her center without penalty while an application for license was pending; (2) upon which she relied; and (3) the representation was made by an agent of the department authorized to do so.
 II.
As a second ground for its appeal the plaintiff contends that the imposition of the civil penalty against her was arbitrary and illegal.
Section 19a-87(a) provides "Any person . . . who shall . . . operate a day care center . . . without a current and valid license shall be subject to a civil penalty of not more than $100 a day for each day that such center . . . is operated without a license."
Based upon the recommendation of the hearing officer, the Department assessed a civil penalty of $3,500 against the plaintiff for operating her center without a license during the period of January 10, 1998 through March 4, 1998.
The plaintiff contends that the policy of the Department to impose a civil penalty is arbitrary because sometimes it allows a center to operate while an application is pending without imposing the penalty. Here the facts are that the plaintiff started to operate the center on November 1, 1997 knowing that she did not have a license. After the Department conducted their site inspection on November 25, 1997, the plaintiff was told to file a licensing application by December 5, 1997. The plaintiff finally filed one on December 9, 1997. That application was incomplete and Ms. Bolat told the plaintiff on December 18, 1997 to file an application by January 5, 1998. The plaintiff consummated her purchase of the center on January 9, 1998 and the plaintiff did not file a application until January 20, 1998, which was inadequate and still incomplete. On February 26, 1998, Ms. Freidenfeld went to the center and CT Page 15949 found that the plaintiff was still not in compliance and operating the center without a license.
Section 19a-87(c) provides that "If the Commissioner of Public Health holds a hearing on a violation of § 19a-87, the Commissioner may, in his discretion order that a civil penalty be imposed not greater than the penalty stated in the notice."
Thus, the statute specifically gives the commissioner the power to impose a civil penalty and the exercise of that discretion "cannot be successfully challenged unless the discretion has been abused." Gibsonv. Connecticut Medical Examining Board, 141 Conn. 218, 230 (1954). While in very rare instances the court has found that an agency's imposition of sanctions abused its discretion, Tucker v. Board of Education,177 Conn. 172, 182 (1979), it regularly recognized that imposition of sanctions is "an inherently fact bound inquiry. In an administrative appeal, the reviewing "court can do no more, on the factual questions presented, than to examine the record to determine whether the ultimate findings are supported, as the statute requires, by substantial evidence'" Pet v. Department of Health Services, 228 Conn. 651, 678
(1994).
Here the penalty imposed by the Department is within the range of penalties authorized by § 19a-87(a). The findings upon which the penalty was imposed are fully supported by substantial evidence in the record. Based upon the particular manner the plaintiff knowingly operated her center without a license and failed to complete her application, and based upon the warnings of the Department to plaintiff, the court cannot conclude the Department abused its discretion in imposing the civil penalty it did.
The plaintiff's grounds for appeal being without merit, this appeal is dismissed.
Robert Satter Judge Trial Referee