[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Defendant Charlotte Hungerford Hospital (hospital) referred the plaintiff, Mohinder P. Chadha, M.D., to the Connecticut Medical Society's Impaired Physician Program/Physician Health Program (Program) in March of 1997. The Connecticut department of public health bureau of regulatory services (department) on May 13, 1997, filed a complaint against the plaintiff requesting that the state of Connecticut medical examining board (board) revoke or take other action under General Statutes § 19a-17
as the board deemed appropriate. On May 14, 1997, defendants Dr. Langer, Dr. Kovalchik and Dr. Schecter submitted affidavits to the department expressing concerns about the plaintiffs ability to practice psychiatry safely.
On May 20, 1997, an order was entered suspending the plaintiffs license pending the completion of the proceedings. The hospital, after receiving notification of the summary suspension by the board, informed the plaintiff that he would not be able to admit patients or otherwise exercise his clinical privileges until the hospital received notice that the plaintiffs license was restored. On November 27, 1997, the hospital submitted a report to the National Practitioner Data Bank (Data Bank) pursuant to 42 U.S.C. § 11133 (a). On January 20, 1998, board CT Page 10342 suspended the plaintiffs license to practice medicine because he had written 10 prescriptions for controlled substances while his license was under suspension.
The plaintiff filed a twenty-one count amended complaint dated July 5, 2000, against, inter alia, defendants Charlotte Hungerford Hospital (hospital) and Doctors Langer, Kovalchik, Schecter and Stein. Each count of the amended complaint was either dismissed or stricken by the court (DiPentima, J.) with the exception of the first count, paragraphs 1-11, the fifth count, paragraphs 1-7, the ninth count, paragraphs 1-6; the twelfth count, paragraphs 1-11; and the entire sixteenth count. The defendants have now moved for summary judgment on the remaining counts pursuant to Practice Book § 17-44. They claim that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law on the basis of the statutory immunity provided by Conn. General Statutes §§ 19a-20 and 19a-17b and 42 U.S.C. § 11111 (a)(1).
STANDARD FOR SUMMARY JUDGMENT
Summary judgment shall be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49; QSP, Inc. v. The Aetna Casualty Surety Company, 256 Conn. 343, 351 (2001). A "material" fact is one that will make a difference in the outcome of the case. Hammer v.Lumberman's Mutual Casualty Co., 214 Conn. 573, 578 (1990). In ruling upon a motion for summary judgment, the court only determines whether an issue of fact exists, but does not try the issue if it does exist.Michaud v. Gurney, 168 Conn. 431, 433 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Dowlingv. Kielak, 160 Conn. 14, 16 (1970); Dorazio v. M.B. Foster Electric Co.,157 Conn. 226, 228 (1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v. Carriage LaneAssociates, 219 Conn. 772, 781 (1991).
Once the moving party has proferred evidence in support of a motion for summary judgment, the "party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact, and, therefore, cannot refute evidence properly presented to the court [in CT Page 10343 support of a motion for summary judgment]." (Brackets in original.)Maffucci v. Royal Park Limited Partnership, 243 Conn. 552, 554-55
(1998).
"The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist."Hammer v. Lumberman's Mutual Casualty Co., supra, 214 Conn. 579. The party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denial but must set forth specific facts showing that there is a genuine issue for trial. Sivek v. Baljevic,46 Conn. Sup. 518, 521, aff'd, 60 Conn. App. 19 (2000).
"[Summary judgment] is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp.,233 Conn. 732, 751 (1995). "The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party." Id., 751-52. "[A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. The facts as well as the evidence must be viewed in the light most favorable to the nonmoving party. . . . The burden of proof is on the moving party and the standards of summary judgment are strictly and forcefully applied." (Emphasis in original.) Id., 752
THE DATA BANK REPORT SUBMISSION
The Health Care Quality Improvement Act (HCQIA) was enacted in 1986 to address the "need to improve the quality of medical care" and "to restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance." 42 U.S.C. § 11101. Congress recognized that "[t]he threat of private money [damages] . . . unreasonably discourages physicians from participation in effective professional peer review" and that there was an "overriding national need to provide incentive and protection for physicians engaged in effective professional peer review." (Emphasis added.) 42 U.S.C. § 11101. The HCQIA establishes immunity, for the "professional review body," as defined in 42 U.S.C. § 11151 (11). "Any person acting as a member or staff to the body . . ." and "any person who participates with or assists the body with respect to the action shall not be liable in damages under CT Page 10344 any law of the United States or of any State. . . ." 42 U.S.C. § 11111
(a)(1). The immunity is not absolute. As to those "providing information to the professional review body" (here Doctors Langer, Kovalchik and Schecter) the immunity does not attach if the "information is false and the person providing the information knew that such information was false." 42 U.S.C. § 11111 (a)(2). As to the "entity" providing information (here the hospital) immunity does not attach if there is "knowledge of the falsity of the information contained in the report"42 U.S.C. § 11137 (c).
A professional review action is protected from private damage claims stemming from such action provided it is taken:
 (1) in the reasonable belief that the action was in the furtherance of quality health care,
(2) after a reasonable effort to obtain the facts of the matter,
 (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
 (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirements of paragraph (3).
42 U.S.C. § 11112 (a). A peer review action (the report to the Data Bank) shall be presumed to have met these standards for immunity unless the "presumption is rebutted by a preponderance of the evidence."42 U.S.C. § 11112 (a). Thus, the statute shifts the burden on summary judgment to the plaintiff who must show by a preponderance of the evidence that the immunity does not attach. Bryan v. Holmes RegionalMedical Center, 33 F.3d 1318, 1333 (11th Cir. (1994), cert. denied,514 U.S. 1019 (1995). The court, then, must "determine whether [the plaintiff] satisfied his burden of producing evidence that would allow a reasonable jury to conclude that the hospital's peer review disciplinary process failed to meet the standards of [the] HCQIA." Id., 1334.
The plaintiff here has failed to produce sufficient evidence to overcome the presumption set forth in the statute. The plaintiff relies on the determination of the board that the department had not sustained its burden of proof as to any "mental illness", "problem[s] with interpersonal relationships," or that the plaintiff [was] "suffering from CT Page 10345 paranoia." The plaintiff also relies on the board's failure to find that "the department sustained its burden of proof as to the claims related to the care provided by the plaintiff to certain of his patients." The fact that the department failed to carry its burden as to these items does not in and of itself make the information false nor does the failure to carry a burden provide sufficient evidence to overcome the presumption.
The plaintiff also relies on the report of Dr. Selig who also concluded that the plaintiff did "not have any significant mental illness and is neither incompetent nor negligent in his treatment of patients." Here again the conclusions and opinions of Dr. Selig do not prove that the hospital had knowledge that the information provided to and in the Data Bank report was false. The plaintiff argues that the alleged failure of the defendants (both the hospital and the physicians) to follow certain procedures is sufficient evidence to show that the report and the underlying documentation was false and that the hospital knew that.
Accordingly, because the plaintiff has not provided sufficient facts to overcome the presumption set forth in 42 U.S.C. § 11112 (a), the motion for summary judgment as to the first count of the amended complaint paragraphs 1-11 dated July 5, 2000, is granted.
THE IMMUNITY ISSUE UNDER GENERAL STATUTES §§ 19a-17 AND 19a-20
The plaintiff was the subject of an administrative proceeding involving his license to practice medicine. The board is a division of the department, a state agency. General Statutes § 20-8a. The board is authorized to restrict, suspend or revoke the license or limit the right to practice of physicians in the state.
 The board derives its authority from three principal statutes: §§ 19a-17, 20-8a and 20-13c. While none of these statutes expressly resolves the question confronted in this case, all three confer authority upon the board to revoke licenses. [The] first order of business, then, is to reconcile these interrelated provisions in order to achieve a sensible overall interpretation that is faithful to the intent of the legislature. . . .
 Subsection (a)(1) of General Statutes § 19a-17
gives the board the authority to "[r]evoke a practitioner's license." The term "practitioner" is not defined by the statute. From the context of the statute, however, it is obvious that § 19a-17 is designed to be an omnibus charter of available CT Page 10346 disciplinary sanctions for many professional boards and commissions. It is therefore not surprising that § 19a-17 employs the general term "practitioner" to describe the class of persons subject to its terms. The terms of § 19a-17 define the outer limit of the disciplinary jurisdiction of boards and commissions within the department of health services. Whether separate provisions that govern specific professions narrow the scope of § 19a-17 must be determined on a case-by-case basis.
 General Statutes § 20-8a implements the general mandate of § 19a-17 for the profession of medicine and surgery. Subsection (e) of § 20-8a provides that the "board shall (1) hear and decide matters concerning suspension or revocation of licensure, (2) adjudicate complaints against practitioners and (3) impose sanctions where appropriate." Rather than conferring new powers or limiting ones already conferred, § 20-8a creates an administrative agency for the supervision of physicians and vests that agency with authority to impose the disciplinary actions set forth in § 19a-17.
 Finally, General Statutes § 20-13c authorizes the board to "restrict, suspend or revoke the license . . . of a physician" for any of seven specified reasons. This section was enacted in 1976 as part of an overhaul of the licensure regulation of Connecticut physicians. Prior to 1976, physicians were subject to license regulation under General Statutes (Rev. to 1975) § 20-45, a general provision that applies to "any licensed or registered practitioner of the healing arts in this state." With the passage of Public Acts 1976, No. 76-276, however, the legislature established new rules for use in licensure proceedings exclusively against physicians. At the very least, the legislature's judgment that physicians are to be evaluated under a separate licensure regime causes us to pay particular heed to its detailed provisions.
(Citations omitted; emphasis in original.) Stern v. Medical ExaminingBoard, 208 Conn. 492, 498-501 (1988).
General Statutes § 19a-14 (a) (10) authorizes the department to conduct investigations regarding "possible violations of statutes or CT Page 10347 regulations, and disciplinary matters." Pursuant to § 19a-14 (b), the department's investigative authority extends to matters concerning the board. General Statutes § 20-13e requires the department to "investigate each petition filed pursuant to section 20-13d, in accordance with the provisions of § 19a-14 (a) (10) to determine if probable cause exists to issue a statement of charges and to institute proceedings against the physician under subsection (e)." Here, the summary suspension of the plaintiff's license was ordered pursuant to § 19a-17.
As part of its decision making process the board considers documentary evidence and conducts quasi-judicial hearings. See General Statutes § 20-13e (e). The actions of the defendants here were undertaken in connection with the administrative process.
The fundamental purpose of the statutes regulating physicians' licenses is "to regulate the profession in the public interest. . . ." Jaffe v.State Department of Health, 135 Conn. 339, 344 (1949). The legislature has chosen to grant immunity to "any member of a medical review committee for any act or proceeding undertaken or performed within the scope of any such committee's [function] . . ."; General Statutes § 19-17b (c); and to "[members] of any board or commission . . . and [persons] making a complaint or providing information to any of such boards or commissions or the Department of Public Health as part of an investigation. . . ." General Statutes § 19a-20.
Generally, testimony and statements made in affidavits in connection with judicial and quasi-judicial proceedings are absolutely immune from civil suit for defamation. Petyan v. Ellis, 200 Conn. 243, 251-53
(1986). Board proceedings are considered quasi-judicial. Paley v.Connecticut Medical Examining Board, 142 Conn. 522, 526 (1955); Gibsonv. Connecticut Medical Examining Board, 141 Conn. 218, 221-22 (1954). The immunity provided by General Statutes § 19a-17b and § 19a-20, however, is qualified and not absolute.
The plain meaning of the statute and general principles of statutory construction must, guide this court. "When interpreting a statute, courts should accord a statutory enactment its plain meaning. . . . Moreover, the meaning of statutory language must be determined from a reading of the statute as a whole. . . . We may not, by construction, read a provision into legislation that is not clearly stated therein." (Internal quotation marks omitted.) Hyllen-Davey v. Plan Zoning Commission,57 Conn. App. 589, 595, cert. denied, 253 Conn. 926 (2000). We are also mindful that "statutes in derogation of private rights should be strictly construed. . . ." (Citations omitted.) Spring v. Constantino,168 Conn. 563, 570 (1975). CT Page 10348
Sections § 19a-17b and 19a-20 are statutes in derogation of the common law in that a statement regarding a lack of skill in one's profession, which might otherwise be the basis of a claim based on libel per se may not be actionable without evidence of "malice," and must therefore be construed strictly. "[W]hen a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. . . . In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope. . . . The rule that statutes in derogation of the common law are strictly construed can be seen to serve the same policy of continuity and stability in the legal system as the doctrine of stare decisis in relation to case law." (Brackets in original; citations omitted; internal quotation marks omitted.) Lynn v.Haybuster Manufacturing, Inc., 226 Conn. 282, 289-90 (1993). When the legislative history is barren of any assistance, the court may examine the language of the statute.
Statutes in derogation of common law are not permitted to operate with unbridled freedom. South Norwalk Trust Company v. Knapp, 8 Conn. Sup. 101,104 (1940), aff'd, 128 Conn. 426 (1941). When an exception to a general rule is created by legislative action, its construction should be strict and its language limited to its evident intent. Id.
As stated above, the board is an administrative agency acting in a quasi-judicial capacity. "It is required to weigh evidence and reach conclusions. . . . But in so doing, it should be circumspect about accepting uncorroborated testimony which consists, in the main, of a statement of oral admissions claimed to have been made by the person summoned to answer charges of professional illegalities or improprieties. . . . [A]s an administrative tribunal, [the board] . . . should not ordinarily find a professional man guilty of a charge leveled against him where proof of the act of wrongdoing is based solely on the uncorroborated evidence of persons testifying to claimed admissions by the party under attack." (Citation omitted.) Paley v. Connecticut MedicalExamining Board, supra, 142 Conn. 526-27.
THE MALICE REQUIREMENT
The defendants argue in the supplemental memorandum in support of the motion before the court that summary judgment should still enter for the defendants "[e]ven if the [c]ourt chooses to consider the issue of malice . . . because plaintiff has not shown that he will be able to prove malice at trial." (Defendants' Supplemental Memorandum dated 4/26/00 at CT Page 10349 5.) The problem is that the defendant has not submitted any documents supporting their position as required by Practice Book § 17-45 et seq.
"Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and anyother proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . In evaluating the propriety of a summary judgment, we are confined to an examination of the pleadings and affidavits of the parties to determine whether (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law." (Citations omitted; emphasis added; internal quotation marks omitted.) Miller v. United Technologies Corp., supra, 233 Conn. 744.
The only document submitted with the defendants' motion is an affidavit from the President and CEO of the hospital that relates to the HCQIA Data Bank Report. There are no documents submitted with the summary judgment motion that address the affidavits of the defendants Langer, Kovalchik and Schecter which were submitted to the department.
The plaintiff argues that questions of motive, intent and bad faith are questions for the trier of fact. See Wadia Enterprises, Inc. v.Hirschfeld, 224 Conn. 240, 250 (1992). Even with respect to issues dealing with state of mind, however, the "party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." Id. "The summary judgment procedure would be rendered sterile if an otherwise valid motion could be defeated by the mere claim that issues intent or state of mind were at issue without providing a factual basis therefore." Wang v. Frankl, Superior Court, judicial district of New haven at New Haven, Docket No. 391493 (Oct. 18, 1999, Thompson, J.), citing Reynolds v. Chrysler First Commercial Corp.,40 Conn. App. 725, 731, cert. denied, 237 Conn. 913 (1996).
"As a general rule, whether or not actual malice exists in a given case is an issue of fact to be determined at trial." Gallagher v. Jackson, Superior Court, judicial district of New Haven at New Haven, Docket No. 351594 (April 3, 1997, Clark, J.) citing Lapadula v. Von Mahland,10 Conn. L. Rptr. 10, 12 (August 18, 1993, Arena, J.); Hutchinson v.Proxmire, 443 U.S. 111, 120 n. 9, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979) ("The proof of `actual malice' calls a defendant's state of mind into question, New York Times Co. v. Sullivan, 376 U.S. 254 (1964), and does not readily lend itself to summary disposition."); United Oil Co. v.Urban Redevelopment Commission, 158 Conn. 364, 376, 260 A.2d 596 (1969). CT Page 10350
"[S]ummary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." (Brackets in original; internal quotation marks omitted.) Suarez v. Dickmont PlasticsCorp., 229 Conn. 99, 111 (1994). The party opposing summary judgment, however, must substantiate its claim to the contrary by showing that there is a genuine issue of material fact, and must disclose the evidence establishing the existence of such an issue. Wadia Enterprises, Inc. v.Hirschfeld, 27 Conn. App. 162, 168-70, aff'd, 224 Conn. 240 (1992).
Here, the plaintiffs burden is as follows:
 (i) the party opposing summary judgment must substantiate its claim . . . by showing that there is a genuine issue of material fact, and must disclose the evidence establishing the existence of such an issue; (ii) "[m]ere statements of legal conclusions and bald assertions, without more, are insufficient to raise a genuine issue of material fact capable of defeating summary judgment;" (iii) "[i]t is not enough that one opposing a motion for a summary judgment claims that there is a genuine issue of material fact; some evidence showing the existence of such an issue must be presented in the counter affidavit;" (iv) "[i]t is not enough . . . merely to assert the existence of such a disputed issue . . . [instead] the genuine issue aspect requires the party to bring forward before trial evidentiary facts, or substantial evidence outside of the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred;" (v) "[m]ere statements of legal conclusions or that an issue of fact does exist are not sufficient to raise the issue;" and (vi) a claim that summary judgment is not appropriate because "intent" is involved "does not relieve [the nonmovant] from presenting a requisite factual predicate for its claim."
Wollen v. Brown, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 260350 (August 27, 1992, Lewis, J.), citing WadiaEnterprises, Inc. v. Hirschfeld, supra, 27 Conn. App. 166, 168-70.
The plaintiff in his complaint alleges that Langer "willfully, deliberately, premeditated with malice-aforethought submitted false allegations with the Department of Public Health" (Revised Complaint CT Page 10351 dated 7/5/00 at Count Five ¶ 6.) The plaintiff alleges that Kovalchik "willfully, deliberately and premeditated with malice-aforethought, made false and unsubstantiated allegations of emotional problems in his affidavit" to the department (Revised Complaint dated 7/5/00 at Count Nine ¶ 5.) The plaintiff further alleges that Schecter "willfully, deliberately and premeditated malice-aforethought, submitted false allegations of malpractice/negligence/incompetent care to the Department of Health" (Revised Complaint dated 7/5/00 at Count Twelve ¶ 7.)
The qualified governmental privilege immunizes public employees from liability for the negligent performance of discretionary duties, it does not protect public employees from liability for wilful, wanton, reckless or malicious acts. In the context of an assertion of qualified governmental immunity, malice is defined differently than "actual malice," a term of art when used in the defamation context. The appropriate showing necessary to defeat a claim of qualified governmental immunity is one of common law recklessness. See Elliott v. Waterbury,245 Conn. 385, 420 (1998).
While the defendants are correct in claiming that the plaintiff failed to present proof of actual malice, they have not met their burden under the Practice Book on a motion for summary judgment. They have failed to offer any proof to counter the allegations of malice against Doctors Langer, Kovalchik and Schecter. Therefore the defendant's motion for summary judgment as to the remaining counts is denied.
Cremins, J.